ROGERS, J.
 

 Defendant appeals from a judgment ordering it to pay plaintiff a royalty on the oil, gas, and gasoline produced under an oil and gas lease covering eighty acres of land owned by plaintiff in Webster parish.
 

 The lease in question was executed by plaintiff in favor of Moffitt & Murphy, and, through mesne assignments, is now owned by defendant.
 

 The royalty clause, which we are called upon to interpret, obligates the lessee as follows, viz.:
 

 (1) To deliver to the lessor, free of cost, in the pipe line to which he may connect his wells, the equal one-eighth part of all oil produced and saved from the leased premises.
 

 (2) To pay the lessor one-eighth royalty for the gas from each well where gas only is found, while the same is being used off the premises.
 

 (3) To pay the lessor for gas produced from any oil well and used off the premises, or for the manufacture of casing-head gas, one-eighth royalty for the time during which such gas shall be used.
 

 At the time of the execution of the lease, no deep wells producing gas rich in gasoline content had been drilled in the field where plaintiff’s land is situated. Subsequently, such wells were drilled, and plants were erected by several eoirrpanies for the extraction of the gasoline content from the gas before running it through the lines for domestic use. And it appears from the record that until the gasoline is extracted the gas is not fit for domestic consumption.
 

 
 *993
 
 In 1929 a well producing gas rich in gasoline content was brought in on plaintiff’s land.
 

 At the time the lease was executed between plaintiff and Moffitt & Murphy, it was not contemplated that gasoline would be stripped from the wells producing gas only.
 

 Plaintiff claims that he is entitled as royalty one-eighth of the gas at five cents per one thousand cubic feet and one-eighth of the gasoline extracted from the gas. Defendant disputes the claim.
 

 Defendant contends that, as the royalty clause is silent as to easing-head gas, royalty is due plaintiff only on the gas itself, including its gasoline content, when it is reduced to possession at the well.
 

 Defendant entered into contracts with the Palmer Corporation of Louisiana, its subsidiary, under which defendant received, four cents per thousand cubic feet for the gas and also one-third of the amount of gasoline extracted therefrom at the company’s plant located at Cotton Valley, La.
 

 Defendant does not own any extraction plant. It contends that its contracts with the Palmer Corporation, which were made without plaintiff’s consent, are fair, and were made in the interest of the royalty owners, including itself.
 

 The record shows that defendant tendered plaintiff four cents per one thousand cubic feet for the gas and his proportion of one-eighth of one-third of the gasoline extracted therefrom, which plaintiff refused to accept in full settlement of his claim for royalty. And defendant demands in reconvention as paid in error the return of $1,232.82 paid plaintiff as royalty on gasoline extracted from the gas.
 

 The court below, in its judgment, ordered that plaintiff receive 3%o of
 
 Vs
 
 of the oil, gas, and gasoline produced on the leased property, and ordered defendant to pay for the gas at the rate of four cents per thousand and gasoline at the market price for each month. The court also gave plaintiff judgment for $2,465.64 as the balance due on the gasoline for the months of October, November, and December, 1929, and January, 1930; ordered that defendant pay 3%o of
 
 Vs
 
 of the gasoline, at the market price, for all months from and including February, 1930, and that all future payments under the lease contract be made in accordance with the judgment and the written opinion of the court made part thereof by reference.
 

 Defendant and appellant assigns the following as errors committed by the court below, viz.:
 

 (1) The court erred in not holding plaintiff to be entitled only to the recovery of his interest in what appellant receives for the gas and the gasoline extracted therefrom; i. e., at the present time four cents per thousand cubic feet for the gas used off the premises, plus one-third of the sales price of gasoline extracted therefrom.
 

 (a) The court erred in not holding that the amount received by appellant for the gas and its gasoline content was the basis for measurement of the amounts to be paid plaintiff.
 

 (b) The court erred in fixing definitely and permanently the amount plaintiff should receive for the gas, i. e., four cents per thousand cubic feet, which price is applicable only so long as it is received by appellant, since
 
 *995
 
 the price may advance or decline at the expiration of appellant’s contract with the Palmer Corporation.
 

 (2) In any event, plaintiff is not entitled to recover more than 3%o of the market value of the gas and gasoline extracted therefrom after deducting the necessary cost of extraction.
 

 We have been referred to two cases in our jurisprudence involving royalty on gasoline under oil and gas leases; namely, Wilkins v. Nelson, 155 La. 807, 99 So. 607 and Wemple v. Producers’ Oil Co., 145 La. 1031, 83 So. 232.
 

 The Wilkins Case was one primarily to annul a mineral contract for lesion; the plaintiff alleging that it evidenced a sale of the oil and gas beneath the surface. As an alternative plea, plaintiff claimed one-eighth of the gasoline defendant produced from the land. The court rejected the claim, holding that gasoline could not be classed as oil within the meaning of the term as used in the
 
 contract
 

 Under the contract, Wilkins conveyed to Nelson all the mineral rights in and to the land for a cash consideration of $900 and a one-eighth royalty on all oil produced on the leased premises. No oil was discovered, but gas was produced from which gasoline was extracted; the residuum of gas being burned in the manufacture of carbon black.
 

 On its peculiar facts, the decision is clearly correct. Having sold the gas without reservation, plaintiff was without any right or interest in it, and the gasoline which he claimed was part of the gas.
 

 The instant case presents a different aspect; the court being called upon here to interpret the royalty provisions of a mineral lease and not to determine the nature of the property leased.
 

 Under the contract in the Wemple Case, the lessor conveyed to the lessee all the oil and gas in and under the leased premises, with the reservation to the lessor of an equal one-eighth of all the oil produced on his lands. The contract further provided that, if gas was found, the lessee should pay the lessor $200 annually for that product. No express provision was made in the contract for any royalty on casing-head gas or gasoline.
 

 The defendant drilled a number of producing wells on the leased premises, and it constructed and operated “a device or plant for the saving of the oil known as ‘casing-head gas,’ being gas saturated with volatile oil, whereby the said volatile oil was condensed and is being condensed into liquid ‘form.’ ” The defendant also installed a plant or factory on the leased premises at a cost of $14,-174.52 for the manufacture of gasoline from casing-head gas obtained' from the lessor’s property.
 

 The court held that, at the time the contract was entered into, it was not in the contemplation of the parties that casing-head gasoline would be produced, and, while holding that it was not oil and covered by the royalty clause on oil, 'the court decided that, the lessee having seen fit to utilize the gasoline, since no one is presumed to give, it was obligated to pay the lessor one-eighth royalty on it, with no deduction allowed for the cost of the factory.
 

 It appears from the record that the Coyle well, like all the wells of approximately the same depth in the Cotton Valley field, produce gas that is so heavily saturated with gaso
 
 *997
 
 line that it is unfit for commercial uses. The gas produced by these wells, which are commonly known as gasoline wells, carries approximately one and one-half to two gallons of gasoline per one thousand cubic feet.
 

 It is shown by the testimony that casing-head gasoline is extracted from a gas well as well as from an oil well. The term was applied originally to gasoline extracted from gas that came out of the casing-head of an oil well, but the term is now also applied to gasoline taken from a gas well.
 

 The record discloses that for the months of October, November, and December, 1929, approximately $14,120 worth of gas was produced by the Coyle well, and during the same period approximately $28,000 worth of gasoline was obtained from the same well.
 

 We think, as was held in the Wemple Case and in Gilbreath v. States Oil Corporation, 4 F.(2d) 232, 233, decided by the United States Circuit Court of Appeals for this Circuit, with Judge Dawkins, formerly an associate justice of this court, delivering the opinion, the issue involved in the case requires that the terms of the contract be viewed in the light of the conditions as they existed at the time, and as to what was reasonably in the minds of the parties as expressed in their agreement.
 

 The petroleum industry has expanded enormously during recent years, due in a large measure to the invention and improvement of the internal combustion engine, and, as said in Gilbreath v. States Oil Corporation, supra, “it has assumed an importance, especially as to the production of petroleum gas or gasoline, second to none as a source of mechanical power.”
 

 If at the time the contract was entered into' the value of the gasoline content of the oil' or gas that might be produced from wells' drilled on the leased premises was unappreciated by the lessee, it is, nevertheless, wholly reasonable to assume that the lessor, a mere layman, had no knowledge of it; otherwise, self-interest would have impelled him to exact a reasonable return for the assignment of so valuable a right.
 

 We find nothing in the record to warrant the belief that the lease under review contemplated that defendant should be allowed to take the gasoline, a product of much" greater value than the gas, from the leased premises by merely paying him for one-eightht of the gas.
 

 If its gasoline content is not regarded as included in the gas within the meaning of the contract, then, obviously, defendant is not entitled to it, or any part of it. If it is so regarded, then one-eighth of it is due plaintiff by virtue of the agreement.
 

 It is established by the record that the lessee itself originally interpreted the lease herein as providing for the payment to the lessor of one-eighth royalty on the gasoline produced by the well on the leased premises, since it paid the lessor on that basis for the months of October, November, and December, 1929;. and January, 1930. No payments were made thereafter on advice of counsel, and defendant now contends that the payments in. question were made in error.
 

 It is also established by the record that it is the custom of the other oil companies operating in the Cotton Valley field under' leases similar to the one under review here
 
 *999
 
 to pay the lessors one-eighth royalty on gasoline produced by the gas wells.
 

 Defendant argues that plaintiff should be charged with its proportion of $190,000, which it cost its subsidiary, the Palmer Corporation, to erect its plant for the extraction of gasoline.
 

 The plant, unlike the plant in th.e Wemple Case, was not erected on the leased premises. If the holding in that case, disallowing the lessee’s claim, is correct, which we think it is, by stronger reasoning the claim of the lessee here should be rejected.
 

 The plant of the Palmer Corporation was erected and in operation long before the well on plaintiff’s land was drilled. The plant serves twenty-three pi'oducing wells, and, judging by the value of the gasoline it extracted from the gas produced by the Coyle well, its operations- are highly profitable. And all its profits are turned over as dividends to the defendant. We find nothing (in the rules of law or the principles of equity applicable to the case that warrants us in assessing plaintiff for any part of the cost of the erection of the plant of the Palmer Corporation.
 

 Defeixdant contends, alternatively, that, if plaintiff is entitled to a royalty on gasoline, he is only entitled to one-eighth of the one-third defendant receives under its contract with the Palmer Company; and that, if this is not so, he is entitled only to one-eighth of (the gasoline after the cost of its extraction is deducted.
 

 In the case of Wemple v. Producers’ Oil Co., supra, the court allowed plaintiff royalty of one-eighth on casixxg-head gasoline free of all cost. This ruling was approved and followed in the Gilbreath Case, supra. And it appears from the record that the other oil companies operating in -the Cotton Valley field pay a straight royalty of one-eighth on gas and gasoline without deducting any stripping charge,
 

 Defendant entered into its contract with the' Palmer Company without obtaining plaintiff’s consent, and the agreement is not binding on plaintiff.
 

 The terms of the lease obligate the lessor to pay the lessee a royalty of one-eighth of the gas produced, which means free of all cost. Under the effect we are giving to the royalty clause of the lease, the lessor is entitled to one-eighth of the value of the gasoline as well as of the gas produced from the lessor’s land, without any deduction whatever.
 

 Defendant assigns as error that the court below definitely and permanently fixed the amoxint of plaintiff’s recovery for the gas produced at four cents per thousand cubic feet, whereas that rate should be made to apply only so long as defendant obtained it. If thexv is any ambiguity in the judgment in that respect, it should be corrected.
 

 For the reasons assigned, the judgment appealed from is amended by making the rate of four cents per one thousand cubic feet of gas that defendant is ordered to pay plaintiff applicable only so long as defendant obtains it, and, as thus amended, the judgment is affirmed at the cost of the defendant and appellant.
 

 
 *1001
 
 O’NIELL, C. J., absent.