150 So. 668

## CRICHTON et al. v. STANDARD OIL CO. OF LOUISIANA.

### No. 32302.

#### July 7, 1933.

#### Rehearing Denied Oct. 30, 1933.

T. M. Milling, F. L. Hargrove, and A. M. Curtis, all of New Orleans, for appellant.

Watkins & Watkins, of Minden, for appellees.

Powell Crichton, of New York City, amicus curiæ.

BRUNOT, Justice.

This is an appeal from a judgment against the defendant for $7,935.56. The plaintiffs have answered the appeal and pray for an amendment of the judgment by allowing them legal interest on the royalties accruing quarterly on the gas and oil reduced to possession and saved by the defendant from a well drilled on the land described in the petition during the defendant's occupancy thereof as lessee. The said land is situated in the Cotton Valley oil field, Webster parish, La. When the well was completed, it produced gas only, but a few months thereafter production ceased. The well was reworked and it was brought in as an oil producer. Subsequently the production of oil ceased, and from that time until the abandonment of the well, it produced a gas and gasoline saturate that was worthless until rendered marketable by the extraction of the gasoline from the gas.

The suit is for the cancellation of the lease, for the sum of the royalties stipulated in the lease, with legal interest thereon, from the due dates thereof, and for an accounting.

After service of the petition, the defendant voluntarily canceled the lease, and plaintiffs concede that the defendant's answer cor-

rectly reflects the quantity of gas, oil, and wet gas the defendant reduced to its possession and saved while operating on the leased land. Plaintiffs also concede that, together with the filing of its answer, the defendant tendered and deposited in the registry of the court $4,835.06, the correct sum of the royalties due the plaintiffs for the said oil and gas and one-eighth of the price received for the wet gas which the defendant sold, in its natural state, to the Palmer Corporation. Therefore, the only questions to be decided by this court are, whether or not the defendant's tender of one-eighth of the price received by the defendant for the wet gas sold to the Palmer Corporation represents one-eighth of the market value thereof at the time the gas was sold, and whether or not defendant should have included in its tender legal interest on the royalties due the plaintiffs, quarterly, on the oil and gas produced and saved during the respective quarterly periods of time the well was in operation.

The pertinent parts of the royalty provisions of the lease are the following:

"The Oil Company agrees to *deliver* to the Grantor the equal *one-eighth* (⅛) *of all oil* produced and saved upon the premises, to be delivered to gauge tanks on the premises, free of cost to Grantor. If any well on said premises produces gas only, the Oil Company *agrees to pay to Grantor* ⅛ of market value, for the product of each well while the same is *being used off the premises*, such payments to be made at the end of each quarter; * * *. The Oil Company shall have the right to use, free of cost, either on or off the premises, any surplus gas from oil wells, ex-

cept that when such gas is used for the manufacture of gasoline, then the Oil Company shall pay as royalty to the Grantor, ⅛ of the market value. * * * " (Italics ours.)

It is seen that the oil royalty is one-eighth of the oil to be delivered and stored on the premises, and the gas royalty is one-eighth of the market value of the gas sold or used off the premises for the manufacture of gasoline.

▆▆ The record discloses that until the defendant filed its answer and deposited, in the registry of the court, the sum of its tender, the plaintiffs' demands were based upon unliquidated claims, and, therefore, in no event, was interest allowable thereon except from judicial demand. State v. Bank of Louisiana, 6 La. 762. It might be added that the good faith of the defendant is not questioned. In Coyle v. Louisiana Gas & Fuel Co., 175 La. 990, 144 So. 737, 743, the royalty clauses of the lease were similar to the royalty provisions of the contract annexed to and made a part of the plaintiffs' petition, except that in the Coyle lease one-eighth of the gas was to be *delivered* to Coyle, while in the Crichton lease one-eighth of the market value of the gas is to be *paid* to the plaintiffs. This difference presents a case more favorable to the defense than was presented in the Coyle Case, for here the gas royalty is based on the market value of the wet gas, and it is shown that there was no market value for that gas in its natural state. It was worthless until rendered valuable by the process of extracting the gasoline from it—a process that required the use of certain plant facilities that were not available to the defendant. Under the

circumstances, the defendant sold the wet gas to the Palmer Corporation, receiving, as the price therefor, one-third of the market value of the gas and gasoline rendered marketable by the extraction process. In this connection we quote, with approval, from defendant's brief the following:

"The record shows that there were four gasoline plants in the Cotton Valley field and that these plants were owned by the Ohio Oil Company, Magnolia Gas Company, Louisiana Oil & Refining Corporation, and the Palmer Corporation (Tr. page 92). The record further shows that defendant sold the gas produced from plaintiffs' land to the Palmer Corporation for two reasons. First, because the Palmer Corporation was the only purchaser of gas in the Cotton Valley field at the time of the completion of the well on plaintiffs' land with facilities to handle such gas. Second, because the Palmer Corporation offered to pay for the gas produced from plaintiffs' land as much as it was paying at that time for any other gas in the Cotton Valley field, and more than it and the Louisiana Oil Refining Corporation were paying for considerable quantities of gas then being purchased by them in the Cotton Valley field."

Inasmuch as defendant was the owner of seven-eighths of the wet gas, and as there is no intimation in the record that the defendant had any interest in or connection with the Palmer Corporation, it is obvious that the gas produced from plaintiffs' land was sold for the best obtainable price therefor. It is true that the sale price of the gas did not meet with plaintiffs' approval, but the defendant was not equipped to refine it, and it had to be sold to give it any value at all. Moreover, it is not shown that the gas could have been sold for a better price than was paid for it. In this connection we quote from defendant's brief the following:

"As soon as defendant learned that plaintiffs had expressed dissatisfaction with the price to be paid by the Palmer Corporation, it requested Mr. Crichton to find some other purchaser who would pay more, but Mr. Crichton failed to find any such purchaser, notwithstanding the fact that he had defendant's assurance that it would join plaintiffs in making a sale to any purchaser who would pay more than the price offered by the Palmer Corporation. (Tr. pages 85 and 86)."

It is true that in the Cotton Valley field it was problematical whether a well would come in as a dry hole, as an oil or gas producer, or as the producer of gas impregnated with gasoline, but in the absence of a provision in a contract, such as the one sued upon, relating to the refining and disposal of a product that is worthless in its natural state, the law steps in and becomes a part of the contract. This is the underlying principle upon which the decision in the Coyle Case, cited supra, is based, and, as was said in that case:

"This we think the law has done by providing, in effect, that the cost of extraction, incurred by the lessee, to preserve the gas and its gasoline content, by making both merchantable, should be deducted before computing and delivering the lessor's royalty."

■ Inasmuch as defendant tendered and deposited in the registry of the court the full amount found to be due the plaintiffs, no interest thereon is recoverable, and the plaintiffs must be taxed with all costs from the date of the tender.

For the reasons assigned, that part of the judgment appealed from awarding the plaintiffs $3,100.50 for one-eighth of the gasoline manufactured from the gas withdrawn from the well on the leased premises, and taxing the defendant with all costs of the suit, is avoided and reversed. In all other respects the judgment is affirmed, the costs to the date of tender to be paid by the defendant, all other costs, in both courts, to be paid by the plaintiffs.

ROGERS, J., dissents.