## UNION PRODUCING CO. v. PARDUE.

## PARDUE v. UNION PRODUCING CO. et al.

### No. 9493.

Circuit Court of Appeals, Fifth Circuit.
Jan. 16, 1941.

Allan Sholars, Geo. Gunby, and H. F. Madison, Jr., all of Monroe, La., and W. Scott Wilkinson, of Shreveport, La., for Union Producing Co. and others.

G. P. Bullis, of Ferriday, La., for C. G. Pardue.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

One of a number of suits brought by lessors to recover the market price of gas sold to lessees at the well in the Richland Field, this is its second appearance here. On the first appeal the cause was reversed for defect in the verdict, and the opinion,[1] instead of discussing the many other questions raised, referred as a guide on another trial, to the opinion in Arkansas Natural Gas Co. v. James M. Sartor, 5 Cir., 78 F.2d 924, a similar case that day decided. There, holding upon the authority of Board of Commissioners v. Pure Oil Co., 167 La. 801, 120 So. 373, that the prescription of three years applied to a claim for arrearages in the royalties due under an oil and gas lease, the judgment was reversed for errors in the admission of evidence as to the market price or value, and decision on other questions raised was reserved for another trial. Thereafter the Sartor case was again tried and again appealed, this time by Sartor. In the opinion on that appeal,[2] reversing again for errors in rulings on the admissibility of evidence as to market value, and declining because of the state of the record as a result of those rulings, to pass upon the issues of settlement, estoppel, accord and satisfaction, this court again canvassed and carefully laid down for another trial the governing rules for proof of market value, the dominant issue in that case, indeed in all of these cases.

Upon the third appeal of Sartor's case,[3] this time by the defendant, all of the rulings of the district judge including his ruling that plaintiff was not entitled to royalties based on the value of the gasoline extracted from the gas, were sustained, except his ruling as to prescription. Because of that ruling and that alone, the cause was again reversed and this ruling was adhered to on the fourth appeal.[4] In addition to these cases, at least three cases presenting identical issues have been decided by the Supreme Court of Louisiana. Wall v. United Gas Public Service Company, 178 La. 908, 152 So. 561; Sartor v. United Carbon Co., 183 La. 287, 163 So. 103; Sartor v. United Gas Public Service Co., 186 La. 555, 173 So. 103.

It will thus be seen that on the trial from which this appeal comes appellant and appellee were running largely a covered track; and that the result of that trial should not be disturbed unless, a substantially erroneous departure from that track is shown or new and substantial issues not heretofore decided have been dealt with in such a way as to require a reversal.

Appellant recognizes this to be so. It therefore makes no attack upon our former rulings. Its whole effort, aside from that expended on its issues of accord and satisfaction, estoppel and acquiescence on which we have not ruled, is devoted to showing that plaintiff did not make out a case under the rules this court has laid down, because (a) the proof he offered is not sufficient under those rules to carry his burden, (b) taking the proof as a whole, it shows an established market price of three cents at the well and thus excludes resort to proof of prices in the field, and (c) upon the evidence as a whole, defendant was entitled to an instructed verdict, that the three cents he had been paying plaintiff was full market price.

On its defenses of accord and satisfaction, acquiescence and estoppel, it is appellant's position that, since from the very first production of gas, statements setting out in detail the royalty payments proposed to be made, had been mailed each month to lessor, accompanied by checks for the amounts shown on the statements to be due, and appellee, though dissatisfied with and protesting these payments as insufficient as early as 1929, has accepted the monthly checks, each check constituted an accord and satisfaction and a settlement as to the true market value of the

[1] United Gas Public Service Co. et al. v. Pardue, 5 Cir., 78 F.2d 929.

[2] Sartor v. United Gas Public Service Company, 5 Cir., 84 F.2d 436, 438.

[3] Arkansas Natural Gas Corp. v. Sartor, 5 Cir., 98 F.2d 527.

[4] Sartor v. Arkansas Natural Gas Corp., 5 Cir., 111 F.2d 772.

gas for that month, and the procedure of appellee in accepting the checks and statements has estopped him from now complaining of them.

■■ A careful canvass of appellant's positions in the light of the record and the controlling legal principles applicable, leaves us in no doubt that they are not well founded· and that the judgment must stand. There is nothing of substance in its claim of procedural error, under the burden of proof rule, in the admission by the court on plaintiff's proffer of proof of the contracts for sales of gas. For, there is in the record, and it is immaterial upon whose proffer, in full accord with our former opinions, qualified testimony in explanation and qualification of these contract prices. Its claim that the proof establishes a three cent market price at the well so as to prevent resort to prices in the field, is no better taken. When it is considered that plaintiffs' leases contemplated that he should have the benefit day by day of any advances in the market over the long period of years covered by the suit, it is quite plain that in a field controlled and dominated by a few producing and pipe line companies, evidence of a few sales at the well on a ·few of those days and evidence of lease contracts fixing a three cent price for the term of the leases, is not such evidence of day by day market value at the well as to exclude resort to the other considerations so fully canvassed and discussed in our former opinions.

■ Finally, it may not be said of appellant's testimony with regard to how the contract prices were arrived at, that it foreclosed the jury from determining as a fact that the market price or value at the well was more than the three cents the lease provided for.

■ Nor are appellants any better situated on their defenses of settlement, estoppel, accord and satisfaction. The issue of estoppel has, on ample evidence that there was none, been decided by the jury against appellant. The issues of settlement, accord and satisfaction, of the failure to submit which appellant complains, were not raised by the evidence. Appellant's charges submitting the issues were properly refused. It was the duty of appellant and its predecessors under the leases in question, to pay appellee each month for the gas it had bought from him in the previous month. The performance of this duty and the receipt by appellee of the check, could not′of itself raise an estoppel against appellee, constitute a settlement, or be the basis of any claim of accord and satisfaction. Nor would the fact that appellant was dissatisfied with the price and grumbled about it, at all change the situation. In order for there to have been an estoppel, appellee must have acted in such a way as to mislead appellant to its detriment, whereas all that appellee did here was to receive the moneys appellant felt bound to tender. In order for there to have been an accord and satisfaction or a settlement for less than was appellee's due, there must have been a real dispute and that dispute must have gone to the point of a recognized active controversy and a settlement of that controversy on terms understood and accepted by the parties to it as such a settlement. Nothing of that kind occurred here. One of the leases gave appellee not less than three cents per 1,000 cubic feet, and under it appellant was obligated to pay at least three cents, even if the market price was lower. The other leases named no minimum market price but as all of the dealings were with the same parties, were of the same kind, and were going forward at the same time and no distinction was made between one lease and another, it is quite evident that all that appellant and its predecessors have been doing, in the course of these dealings, was to pay what they felt themselves obligated to pay and all that the appellee has been doing was without distinction between the leases, taking the least sum which, under at least one of them, appellant could lawfully pay. Under such conditions and on a record of this kind, the district judge was right in declining to submit an issue of settlement or of accord and satisfaction. There was no settlement, there was no accord, there was no satisfaction. We find no error in the judgment as to the main appeal.

The cross appeal presents a single point that, in addition to recovering the market price of the gas at the well where under the terms of the leases the title to the gas passed to appellant and its predecessors, plaintiff should have recovered the price or value of ⅛ of the gasoline extracted from the gas the well produced.

228

It comes up in this way: As first brought in November 23, 1932, the suit was for the market value of the gas produced from the well, the amount of gas so produced from the well and its value being stated in the pleading. Nothing was said about gasoline. Nearly four years later, in November, 1935, plaintiff filed an amended petition in which it alleged that the gas came from the ground, saturated with gasoline to the extent of 4/10 of a gallon of gasoline to each 1,000 cubic feet and that in the 1/8 value and market price of the gas, which comes from the ground, was included, and plaintiff was entitled to receive, the value and market price of the gasoline content. The amendment declares this to be five cents per gallon, that each thousand cubic feet of gas contains 4/10 of one gallon and in addition to the full value of the gas already sued for in the original petition, it sues for two cents per 1,000 cubic feet for the value of its gasoline content.

The District Judge, on a motion to dismiss the amended petition, holding that plaintiff's suit as originally filed for the market price of all the gas produced from the well, necessarily included the gasoline content, and that it would be a double recovery to allow plaintiff to recover for the full market price of the gas at the well and two cents per 1,000 cubic feet more for its gasoline content, sustained the motion and dismissed the amendment.

■ Here cross appellant in support of his claim relies on the statutory definition of natural gas,[5] " 'Gas' means natural gas as it is taken from the earth, including any gasoline content it may have, but it does not include casing-head gas", and on Coyle v. Louisiana, etc., Co., 175 La. 990, 144 So. 737, and Wall v. United Gas, etc., Co., 178 La. 908, 152 So. 561. We might dispose of the cross action by a mere reference to our holding in the Arkansas Natural Gas Corp. v. Sartor, 5 Cir., 98 F. 2d 527, that the contract did not entitle plaintiffs to royalties based on the value of the gasoline extracted from the gas. But, in view of cross appellants' insistence that the matter is ruled otherwise in Louisiana, in the Coyle and Wall cases, we will point out that this is not so and why.

The statute cross appellant invokes makes against, not for, his position. It

expressly declares that the term gas means natural gas as it is taken from the earth including any gasoline content it may have, and leaves no question but that the sale of gas carries to the purchaser all, not part, of its content. Cf. the Coyle and Wall cases, supra, and Humble Oil & Refining Company v. Poe, Tex.Com.App., 29 S.W.2d 1019; Lone Star Gas Co. v. Stine, Tex.Com.App., 41 S.W.2d 48, 82 A.L.R. 1299; Wilkins v. Nelson, 155 La. 807, 99 So. 607. It is true that in the original opinion in the Coyle case [175 La. 990, 144 So. 739], the court said, "We find nothing in the record to warrant the belief that the lease under review contemplated that defendant should be allowed to take the gasoline, a product of much greater value than the gas, from the leased premises by merely paying him for one-eighth of the gas. If its gasoline content is not regarded as included in the gas within the meaning of the contract, then, obviously, defendant is not entitled to it, or any part of it. If it is so regarded, then one-eighth of it is due plaintiff by virtue of the agreement."

Aside from the fact however that no issue was made of this point in the case, it being conceded that under the lease contract plaintiff was entitled to 1/8 of the gasoline and the suit being only with regard to whether plaintiff could get this 1/8 of the gasoline without paying any part of the cost of its extraction, the conditions in the field involved and the terms of the lease were entirely different from those here. There, the gas was so rich in gasoline with one and a half to two gallons per 1,000 feet, that it was worthless unless the gasoline was first extracted. This was recognized by both parties, and the lessee from the beginning accounted to plaintiff for 1/8 of the gasoline. But more important, the lease there was not as here, one in which the lessor sold the gas to lessee at the well. There was no provision in that lease for sale of the gas. There, the provision was that the lessee would "pay the lessor one-eighth royalty for the gas from each well where gas only is found, while the same is being used off the premises." Under such a provision, it was the duty of the lessee, absent an agreement for its purchase, to deliver to the lessor in kind, gas, gasoline, or what-

[5] Louisiana Act 252 of 1924, Section 13, (Dart, Sec. 4783).

ever was made from the gas issuing from the well, or to account to him for his ⅛ of the proceeds of all sales. Here, the title to the gas passes to lessee at the well, lessee being obligated to pay lessor the value of it there. In the opinion on rehearing in the Coyle case, the true issue in the case was made clear. The court saying: "The true issue * * * is whether plaintiff, as lessor, is entitled to be paid his proportionate part of the net sale price, or of the gross sale price, of the gasoline extracted from the gas, due him as royalty, produced from gas wells on the lease.", held that as owner of the gasoline, lessor must pay his share of the expenses and must be settled with on the basis of the net sale price after expenses paid. In Wall's case, the lease provided as the lease here does, that the grantor should be paid ⅛ of the value of the gas calculated at the market price, but the conditions in the field as to the strong impregnation with gasoline were the same as those in the Coyle case, and as in that case, the lessee from the beginning had recognized the right of the lessor to an interest in the gasoline. There the lessor contended not for ⅛ but for all of the gasoline and when the case reached the Supreme Court, two main questions and one secondary one were raised, posed and decided there. First, as to what was the meaning of the terms "market prices" as used in the lease, second, whether the lessor under the lease providing for a ⅛ royalty interest "is entitled to all the gasoline extracted from the gas or only ⅛ of it,", and third, the question decided in the Coyle case, whether plaintiffs were entitled to the gross value of ⅛ of the gasoline, or its net value after costs of extraction had been paid.

■ Plaintiff, in this case, having in his primary pleading alleged that lessee was entitled to and had bought all of the gas which came from the well and as a result of that purchase was liable to him for the full value of ⅛ of it, the district judge was right in holding that he could not add to the claim for that full value, another claim for two cents per 1,000 feet more, because the purchaser of the gas had extracted gasoline from it. Plaintiff's appeal presents no error. The judgment is affirmed as to both appeals.

Affirmed.