**754**

Barton W. FREELAND, C. J. Freeland, Jr., Bertrand N. Sweeney, Jr., Mrs. Etta Stamm Sweeney, Howard Kevin Sweeney, Mrs. Ethel Freeland Darden, John Ed. Freeland, Paul B. Freeland, Mrs. Mary Etta Sweeney Johnston, and First National Bank of Crowley

v.

SUN OIL COMPANY and Cities Service Oil Company, Sohio Petroleum Company, Intervenor.

Civ. A. No. 5906.

United States District Court
W. D. Louisiana,
Lake Charles Division.

March 14, 1959.

Breazeale, Sachse & Wilson, Baton Rouge, La., for plaintiffs.

Liskow & Lewis, Lake Charles, La., for defendants and intervenor.

HUNTER, District Judge.

Notwithstanding the voluminous documentary evidence appearing in the record, this suit is not complicated insofar as the basic issues and facts are concerned.

Five oil, gas and mineral leases were granted by the plaintiffs affecting separately owned tracts in the Egan Field of Acadia Parish, Louisiana. Plaintiffs in the case are the lessors or the successors in title to the lessors who granted oil, gas and mineral leases now held by defendants. Each lease contains the following reservation of royalties in favor of the lessor:

"The royalties to be paid by Lessee are: (a) on oil, one-eighth of that produced and saved from said land, the same to be delivered at the wells or to the credit of Lessor into the pipe line to which the wells may be connected; Lessee may from time to time purchase any royalty oil in its possession, paying the market price therefor prevailing for the field produced on the date of purchase; (b) *on gas,* including casinghead gas or other gaseous substance, *produced from said land* and sold or *used* off the premises or *in the manufacture of gasoline or other products therefrom, the market value at the well* of one-eighth of the gas so sold or used, provided that on gas sold at the wells the royalty shall be one-eighth of the amount realized from such sale; * * *." (Italics added.)

The property affected by these leases is productive of oil and gas, principally from the Hayes formation in the Egan Field. A series of orders by the Commissioner of Conservation of Louisiana established a cycling and pressure maintenance unit for the Hayes Field reservoir, and the tracts presently covered by the five leases here involved have received and are now receiving their proportionate share of unit production.

All of the gas well production obtained under the terms of the five leases involved in this suit is carried from the well and delivered in a co-mingled state with other full stream gas to the processing plant of Acadia Corporation. The liquid content of the gas is not separated on the leased premises, but on the contrary, is carried with the gas to the processing plant. This method of producing and transporting the gas was expressly authorized by Department of Conservation Order 111–Q issued on January 3, 1951.

The processing plant is owned by Acadia Corporation, a company engaged in the business of constructing and operating such plants. None of the defendant companies have any interest in the plant or in Acadia Corporation itself. Based on an admittedly "arm's length" independent negotiation conducted over a period of some fourteen months, a series of agreements were entered into between the producers, including defendants, and Acadia Corporation, which culminated in the consolidated processing agreement of July 1, 1954. Under that agreement, 35.7 per cent of the liquid products derived from the processing of the gas in the plant is now retained by Acadia Corporation as a processing charge. The remaining 64.3 per cent of the liquid products

is returned to the producers, including defendants, and all of the residue gas is delivered to pipe line market or returned to the cycling unit for the benefit of defendants and their royalty owners. The 35.7 per cent processing charge relates only to the refined products, and does not apply to the dry residue gas. The plant operation involves the following processes: The gas, which is carried full stream to the plant, is first sent through an inlet separator which removes the condensate from this full stream gas. After the condensate is removed by the inlet separator, the separator gas is sent to absorption towers where additional liquids are absorbed from such gas. The residue gas remaining after the absorption tower process is then sent through a dehydrator and is delivered to the pipe line company or is returned to the cycling unit by the producers. All liquids recovered, both from the inlet separator and from the absorption tower process, are then further processed to obtain propanes, butanes, motor fuel and other products.

Substantial quantities of both oil and gas are being produced from or allocated to the properties affected by the five leases involved here. There is no dispute over the royalties accruing on the oil production, or for that matter on the gas production, except for the single item of 35.7 per cent of the liquid products retained by Acadia as a processing charge. This charge and the claim of the plaintiffs with respect thereto represents approximately six per cent of the total royalties accruing under these leases; or stated another way, plaintiffs are being paid or credited with undisputed properties of approximately 94 per cent of the total royalties claimed by them.

There is no other processing plant in the general area of the Egan Field, and with very minor exceptions all gas produced from the Egan Field is processed in the Acadia Corporation plant under the consolidated processing contract.

Plaintiffs are being paid for their royalty gas on exactly the same basis that defendants are being paid for their work-ing interest gas, but, plaintiffs contend, the defendants are not entitled to pass along to the lessors and royalty owners any part of the extraction costs paid to Acadia and assert that they should have an accounting from defendants based on 100 per cent of the products realized from the Acadia processing operation. They would, in other words, have the defendants bear the entire expense of the Acadia processing charge. Plaintiffs' complaint asserted a claim for (1) cancellation of the leases for non-payment of royalties and (2) an accounting of "the full ⅛th royalty on the plaintiffs' interest" under the leases, including— and this is all that is in dispute here—an accounting based on ⅛th of 100 per cent of the products realized from the processing operation. In the alternative, plaintiffs' request that if the Court should ultimately hold defendants are entitled to make a charge against lessors on account of the extraction of the liquid hydrocarbons by Acadia, that then the charge made here is unreasonable and should be reduced.

On July 31, 1957, this Court granted summary judgment in favor of defendants, dismissing that portion of plaintiffs' suit which sought:

(1) Cancellation of the existing mineral leases, and

(2) A demand for accounting based on 100 per cent of the products realized from the processing operation.

Plaintiffs have abandoned their request for lease cancellation but are re-urging their position that the defendants were not entitled to pass along to them any part of the extraction costs.

 Plaintiffs assert that the issue in this case is the correct basis for the calculation of royalties payable on account of the extraction and disposition of liquid hydrocarbons from gas which is then returned to earth in the recycling process heretofore described. They then argue that the lease has no express provision authorizing lessees to make any deduction on account of the cost of extracting liquid hydrocarbons and accord-

ingly they are entitled to a full ⅛th royalty on these hydrocarbons so produced. Plaintiffs further argue that the royalty provision payment set out on page one hereof is not applicable because defendants did not buy the gas at the well, have paid nothing for it and now want to pay for only a part of the elements which they have taken from it by the cycling operation and the processing. We do not agree. It is true that defendants did not buy the gas or sell it to others at the well, but they did use this gas off the premises in the manufacture of gasoline or other products therefrom and they are, under the terms of the lease, obligated to pay to plaintiffs the market value at the well of ⅛th of the gas so used. There was only one market for the Egan gas insofar as the liquid recoveries were concerned. Accordingly, there could be one market value for the liquid content of this gas, and that is the amount realized from the processing of that gas through the Acadia Corporation plant. Federal decisions and Louisiana decisions have uniformly held that all costs of processing, transportation and marketing must be deducted in arriving at the market value of royalty gas which thereafter is processed in a gasoline plant. Union Producing Company v. Pardue, 5 Cir., 117 F.2d 225; O'Neal v. Union Producing Company, 5 Cir., 153 F.2d 157; Coyle v. Louisiana Gas and Fuel Company, 175 La. 990, 144 So. 737; Crichton v. Standard Oil Company of Louisiana, 178 La. 57, 150 So. 668; Wall v. United Gas, Public Service Co., 178 La. 908, 152 So. 561; Maddox v. The Texas Company, D. C., 150 F.Supp. 175. A review of the jurisprudence convinces the Court that its original ruling granting summary judgment was correct, and it is reaffirmed.

■ There remains only the question of the reasonableness of the processing charge. It has been conceded from the outset that the contract between defendants and Acadia was a bona fide one. It seems to me that plaintiffs are relying mainly on their legal argument that no charge could be made. There is nothing in plaintiffs' brief to suggest to the Court what the amount of a reduced charge would be. It should be remembered that the defendants had decided after serious studies that they could not justify a separate processing plant at Egan, and that they negotiated the contract with Acadia, and that this contract returns to them and to the royalty owners amounts in excess of what they would have realized from field operation without the plant.

■ Plaintiffs have introduced and strongly rely on contracts dealing with other cycling projects in Louisiana where either no processing charge, or a small processing charge, was involved. These projects were not located in or near the Egan Field. We find that there is no factual analogy between these contracts and the situation here. All of those contracts involve multi-sand reservoirs with most being very rich in liquid content. Little or no resemblance can be found with the situation that existed at Egan where the operators were dealing with a single reservoir that was comparatively lean in liquid content of the gas. We agree with counsel for defendants that these unitization agreements relied on by plaintiff actually represent a modification of the royalty provisions of the lease contracts, and we agree, too, that the fact that the parties to these agreements elected to make these modifications hardly can serve as a valid basis upon which this Court can modify judicially the royalty provisions of the leases now before it.

The lessee defendants acted in good faith and used due diligence. No other market was available, and they made the best terms possible. It is concluded that plaintiffs have not proven that the processing charge is unreasonable and/or arbitrary, and plaintiffs' suit should be dismissed. Counsel for defendants shall prepare and submit suggested findings of fact and conclusions of law.

Findings of Fact and Conclusions of Law

This cause having been submitted to the Court on the stipulation of the parties

hereto, the testimony of various witnesses and exhibits admitted in evidence on behalf of the respective parties, and the Court having fully considered the evidence as presented and the arguments of counsel as set forth in their respective briefs, does now make the following findings:

## Findings of Fact

1. Plaintiffs herein are the lessors or the successors in title to the lessors, and the defendants and the intervenor herein are the owners as lessees or successors in title to the lessees of five oil, gas and mineral leases affecting separately owned tracts of land in the Egan Field of Arcadia Parish, Louisiana.

2. Each of the five leases contains the following reservation of royalties in favor of the lessor:

"The royalties to be paid by Lessee are: (a) on oil, one-eighth of that produced and saved from said land, the same to be delivered at the wells or to the credit of Lessor into the pipe line to which the wells may be connected; Lessee may from time to time purchase any royalty oil in its possession, paying the market price therefor prevailing for the field produced on the date of purchase; (b) *on gas*, including casinghead gas or other gaseous substance, *produced from said land* and sold or *used* off the premises or *in the manufacture of gasoline or other products therefrom, the market value at the well* of one-eighth of the gas so sold or used, provided that on gas sold at the wells the royalty shall be one-eighth of the amount realized from such sale; * * * ." (Italics added)

3. The Commissioner of Conservation of Louisiana, through a series of formal orders based on public hearings, created a cycling and pressure maintenance unit for the Hayes Sand Reservoir in the Egan Field and unitized all of the separately owned tracts within the unit so created.

4. The properties presently covered by the five leases referred to above are included within the Hayes Sand Unit, and have received and are now receiving their fair share of unit production. The major portion of the oil and gas being produced by defendants and intervenor or being allocated to the properties affected by these leases is being obtained from the Hayes Sand in the Egan Field.

5. All of the gas well production obtained from or allocated to the lands under the terms of the five leases involved in this suit is carried from the well and delivered in a commingled state with other full stream gas to the processing plant of Acadia Corporation. The liquid content of the gas is not separated on the leased premises, but on the contrary, is carried with the gas to the processing plant. This method of producing and transporting the gas was expressly authorized by Department of Conservation Order 111–Q issued on January 3, 1951.

6. The processing plant is owned by Acadia Corporation, a company engaged in the business of constructing and operating such plants. None of the defendant or intervenor companies has any interest in the plant or in Acadia Corporation itself. Based on admittedly "arm's length" independent negotiations conducted over a period of some fourteen months, a series of agreements were entered into between the producers in the Egan Field, including defendants and intervenor, and Acadia Corporation, which culminated in the consolidated processing agreement of July 1, 1954. That contract and those preceding it are admitted to be bona fide agreements.

7. Prior to the commencement of negotiations with Acadia Corporation, defendants and intervenor had made serious studies of the economic feasibility of constructing and operating a processing plant in the Egan Field and had concluded that a separate plant for their Egan gas could not be justified.

8. The Acadia Corporation plant operation involves the following processes: The gas, which is carried full stream to the plant, is first sent through an inlet separator which removes the condensate from this full stream gas. After the condensate is removed by the inlet separator, the separator gas is sent to ab-

sorption towers where additional liquids are absorbed from such gas. The residue gas remaining after the absorption tower process is then sent through a dehydrator and is delivered to the pipe line company or is returned to the cycling unit by the producers. All liquids recovered, both from the inlet separator and from the absorption tower process, are then further processed to obtain propanes, butanes, motor fuel and other products.

9. Under the consolidated processing agreement of July 1, 1954 made by defendants and intervenor with Acadia Corporation, 35.7 per cent of the liquid products derived from the processing of the gas in the plant is now retained by Acadia Corporation as a processing charge. The remaining 64.3 per cent of the liquid products is returned to the producers, including defendants and intervenor, and all of the residue gas is delivered to pipe line market or returned to the cycling unit for the benefit of defendants and intervenor and their royalty owners. The 35.7 per cent processing charge relates only to the plant products, and does not apply to the dry residue gas.

10. There is no processing plant in the general area of the Egan Field, other than the Acadia Corporation plant at Egan, and with very minor exceptions all gas produced from the Egan Field is processed in the Acadia Corporation plant.

11. The defendants and intervenor, as lessees, acted in good faith and used due diligence in negotiating the Acadia Corporation contract for the liquid components of the gas. No other market was available, and they made the best terms possible.

12. Plaintiffs have been and are being paid for their royalty on exactly the same basis that defendants and intervenor are being paid for their working interest, that is, defendants and intervenor are accounting to plaintiffs for their proportionate share of the value of the plant products realized from the Acadia Corporation processing operation, less only their proportionate share of the actual 35.7 per cent charge imposed by Acadia Corporation as a processing charge under the consolidated agreement of July 1, 1954.

13. The amounts realized by plaintiffs on the liquid content of the royalty gas through the arrangement with Acadia Corporation, after deducting the Acadia Corporation charge, are in excess of what plaintiffs would have realized on that royalty gas from ordinary separation methods on the lease or unit without using the plant.

14. The contracts relied on by plaintiffs which dealt with other cycling projects in Louisiana where either no processing charge or a small processing charge was involved (1) were not located in or near the Egan Field, (2) involved multi-sand reservoirs, with most being very rich in liquid content, as compared with the situation at the Egan Field where the defendants and intervenor were dealing with a single reservoir that was comparatively lean in liquid content of the gas; and (3) actually represented a negotiated modification of the royalty provisions of the lease contracts involved in those projects.

15. Substantial quantities of both oil and gas are being produced from or allocated to the properties affected by the five leases involved here. There is no dispute over the royalties accruing on the oil production, or for that matter on the gas production, except for the single item of 35.7 per cent of the plant products retained by Acadia as a processing charge. This charge and the claim of the plaintiffs with respect thereto represents approximately six per cent of the total royalties accruing under these leases.

16. On the question of the reasonableness of the processing charge, plaintiffs have not offered any evidence or suggestion in their brief as to what the amount of the charge should be.

17. Plaintiffs have expressly abandoned their demand for cancellation of the mineral leases involved.

**760**

Conclusions of Law

1. This Court has jurisdiction of the parties and of the subject matter herein.

2. The royalty provisions quoted in Finding No. 2 above, and particularly the italicized portion of those provisions, are applicable to the facts of this case, because defendants and intervenor have used and are using the gas produced from their leases in the manufacture of gasoline and other products; and, under these royalty provisions plaintiffs are entitled to receive the market value at the well of one-eighth of the gas so used.

3. Under the facts of this case, only one market existed and still exists for the liquid content of the gas produced from the five mineral leases involved herein; accordingly, there could be only one market value for the liquid content of the gas, this being the amount realized from the processing of that gas through the Acadia Corporation plant under the consolidated processing agreement of July 1, 1954.

4. All costs of processing, transportation and marketing should be deducted in arriving at the market value of royalty gas which thereafter is processed in a processing plant.

5. The bona fide contract made by defendants and intervenor with Acadia Corporation, having been made in good faith with the use of due diligence, and having resulted in realizing to both plaintiffs and defendants and intervenor amounts in excess of those that would have been realized from ordinary field separation methods, are to be accepted as the basis of determining the market value of the royalty gas for the purpose of paying royalties to plaintiffs.

6. The contracts dealing with other cycling projects in Louisiana are not determinative of the market value of the gas produced from the leases affecting plaintiffs' properties at Egan.

7. The summary judgment rendered herein by this Court on July 31, 1957, dismissing that portion of plaintiffs' suit seeking cancellation of the mineral leases involved and a demand for accounting based on 100 per cent of the products realized from the Acadia Corporation processing operation is correct and is reaffirmed.

8. The Acadia Corporation processing charge is reasonable and not arbitrary, and there being no probative evidence to the contrary, the remainder of plaintiffs' suit should also be dismissed. A judgment in accordance herewith is to be submitted.