THOMPSON, J.
 

 This suit is for $2,500, together with 20 per cent, thereon as attorney fees, for the .erection and construction of a granite tomb in the Catholic Cemetery in the village of Breaux Bridge-for the repose, of the bodies of the father, mother, and brother of the defendant. The order and contract for the tomb was in writing, and the petition alleges that the plaintiff had fully complied with all his obligations under the contract; that the work had been completed and delivered to the defendant since July 1, 1922; that the contract price was past due, and demand for.payment liad been made in vain.
 

 The contract provided that “said work shall be delivered on cars before January 1, 1922, or as soon thereafter as possible,” but there was no time specified within which the erection of the tomb should be completed. The material was received and the work -was commenced some time in February, 1922, and the tomb was completed some time in the latter part of May or the first of June of that year.
 

 It is alleged in defense that the plaintiff violated and breached his contract in that he failed to deliver the materials for the tomb on January 1, 1922, as he was required by the contract to do.
 

 This defense cannot be serious, because the contract provided that delivery of the work should be made on the cars before January 1, or as soon thereafter as possible, and it was further provided that should the marble or granite quarries or railroad companies prevent Blakesley from delivering said work at the time stipulated, then he should deliver the work as soon thereafter as possible.
 

 It is shown that the delay in the delivery was not due to the fault of the plaintiff, but to that of either the quarries or the railroads, and besides, the delivery in February was within a reasonable time, and was “as soon as possible” as stipulated in the .contract.
 

 But more than this, the defendant made no objection to the delay in the delivery of the material and commencement of the
 
 *313
 
 work. She did not at the time complain, nor did she ask to have the contract abrogated on that account. She remained silent, acquiesced in the- delay, and permitted the plaintiff to receive the material and to proceed with the work to the completion of the tomb. She even wanted the plaintiff to delay the commencement of the work on the tomb till in the late summer or early fall.
 

 Manifestly the defendant, in view of these facts, cannot shift her position and urge the matter of delay as an excuse for not paying, the price of the tomb.
 

 The only defense entitled to serious consideration is that the plaintiff, through negligence and' carelessness, and through unskilled workmanship and using faulty material in the construction, has not furnished the defendant with such a tomb as called for by the contract.
 

 .It is alleged that the tomb is in a decomposed condition, showing cracks, part of same falling apart, and in some places hollow; that the height of the tomb is five inches less than that called for by the contract ; that the marble slab on the right side of the tomb is concave, being chipped off at the bottom in a very unskilled manner; whereas the slab on the left side is perpendicular and of finer finish of marble, and not chipped as on the right side, thus giving the tomb the appearance of inflation on said right side.
 

 Unquestionably the defendant was entitled to have such a tomb erected as the one called for by the contract, and she could not be compelled to accept and to pay for a tomb not erected in substantial compliance with the contract.
 

 There was a variance in the actual dimensions of the tomb as constructed and the dimensions stipulated in the contract, but this difference was so slight that it required an actual measurement to. determine it. The difference is too insignificant and trivial to justify the court in holding that the tomb was not substantially the one contracted for.
 

 The design selected by the defendant called for a granite tomb, rock-faced.. It was not required to be polished. It is in evidence that such rocks are not always sent out from the quarries made to the exact measurement required. Hence they have to be rock-pitched, in order properly to join them and to place them on a level.. The rock pitching cannot always be made to go the way the worker wants it to go. The tomb in question appears to be a little more heavily rock-pitched on one side than on the other, and it is a fact that the right side has a slight convex appearance, discernible by a close and critical observer. But this, it seems, could not always be avoided in erecting a tomb with the class of material of the one under consideration.
 

 . An examination of the entire evidence satisfies us, as it did the district judge, that the defendant has received a tomb in all substantial particulars with respect to materials and workmanship as the one she contracted for, and that her complaint is not well founded.
 

 The defense does not impress us as being real and serious. It seems to be more of an afterthought. The real reason for not paying for the tomb when it w'as completed was the inability of the defendant to raise the money.
 

 The contract provided that the price was to be paid in cash on delivery. When the material for the tomb was received, the defendant, through her husband, requested the plaintiff to postpone the erection of the tomb until the fall, agreeing to store the material. The reason given for this request was that the defendant could not secure the money at that time of the year, and that financial conditions would be more favorable in the fall. The plaintiff declined to postpone the work.
 

 While the tomb w'as being constructed the defendant and her husband had every op
 
 *315
 
 portunity to visit and to inspect tlie work. They did visit the tomb on several different occasions, and appeared to be well satisfied— at least-no objection was raised by them to the material or to the manner of workmanship. When the bodies of the defendant’s father, mother, and brother were placed in the tomb before it was completed the defendant was notified and requested ,to be present; but for personal reasons she declined. When the tomb was completed all but the door the defendant visited the tomb for the purpose of showing where she desired the Woodman emblem to be carved on the door. At no time did she complain of any defects in the construction of the tomb.
 

 Aftei; the work was finished demand was made on the defendant for payment, and she referred the plaintiff to her husband. And when a call was made on the husband he said the matter would have to be referred to his wife—statin'g that his wife and her sister would have
 
 to
 
 be satisfied.
 

 No complaint was made by either the defendant or her husband until an examination was made by some third persons at the in-, stance of the defendant, and the defense of defective materials and unskillful workmanship was based on the report and the measurements made by these parties.
 

 There was a complaint made prior to the suit by the mayor of the village on the relation of the rector of the Catholic Church, to the effect that the door of the tomb did not close as tightly as it should and for that reason it was thought that the tomb would be a menace to health. , The priest suggested the construction of a closed brick wall behind the hinged door of the tomb. The plaintiff placed this brick wall as requested, and this was satisfactory to the priest and to the village authorities.
 

 Erom all of which we repeat that the defense now urged is more of an afterthought and is without foundation in fact. I
 

 The trial judge rejected the demand for attorney fees, and the plaintiff has asked for an amendment of the judgment in this respect.
 

 The contract between the plaintiff and defendant provides:
 

 “And should E. R. Blakesley place this.contract in the hands of an attorney for collection, it is agreed further that the purchaser shall pay 20 per cent, on the aggregate amount as attorney fees.”
 

 The plaintiff was compelled to sue on the contract for the price of the tomb. The contract in this respect may be a hard one for the defendant, but it is one that the parties were competent, to make, and had the right to make. It is the law between them, and the court has no alternative except to enforce it as written.
 

 Eor the reasons assigned, it is ordered that the judgment appealed from be amended by awarding the plaintiff 20 per cent, upon the contract price of the tomb as attorney fees, and, as amended, that the said judgment be affirmed, at the costs of appellant.