163 So. 103

**SARTOR et al. v. UNITED CARBON CO.**

No. 33116.

June 19, 1935.

Rehearing Denied Aug. 30, 1935.

G. P. Bullis, of Vidalia, for appellants.

McHenry, Lamkin & Lamkin and Charles Titche, all of Monroe, for appellee.

Anders & Anders, of Winnsboro, A. S. Drew, of Minden, Blanchard, Goldstein, Walker & O'Quin, and Wilkinson, Lewis & Wilkinson, all of Shreveport, Oliver & Digby, of Monroe, Tobin R. Hodge, of Rayville, and Sholars & Gunby, of Monroe, amici curiæ.

HIGGINS, Justice.

Plaintiffs as assignors of certain oil and gas leases brought this action to recover from the defendant the difference between the amount of the royalty paid and the amount of the royalty alleged to be due, as well as the amount of the severance tax said to have been illegally deducted from the royalty covering the years of 1930, 1931, and 1932.

Defendant filed exceptions of no right or cause of action on the grounds: First, that the plaintiffs are not entitled under the terms of the leases to have the royalty computed on the basis of the market price in Richland parish, of the gas produced, but only to the market price at the well or field; and, second, that under the provisions of Act No. 140 of 1922 as construed by this court, and under the terms of the leases, plaintiffs were obligated to bear their proportionate share of the severance tax which had been deducted from the amounts paid the plaintiffs.

There was judgment sustaining the exceptions and dismissing the suit, and plaintiffs have appealed.

It is conceded that the lessors, under the provisions of the leases which are annexed to and made a part of the petition, were entitled to be paid the royalty of one-eighth of the value of the gas calculated on the market price at the well. The petition alleges that plaintiffs are entitled to the market price at points nearest to the well in Richland parish, because there were no sales at the well. The petition does not state that there were no sales or market for the gas at the field in question.

■ This court, in the case of Wall v. United Gas Public Service Co., 178 La. 908, 152 So. 561, held that the language in the lease which required the royalty to be paid on the basis of the market price at well was synonymous with the market price at the field where the gas was produced. However, the court did not go so far as to hold that the market price at the well was equivalent to the general market price in the parish where the gas was produced. The obvious reason why the market price at the well or field where the gas is obtained cannot be said to cover the market price in the parish where the gas is produced is because of the transportation charges which would necessarily augment the market price in the parish above the market price at the well or field. The clauses of the lease are clear from ambiguity and doubt and constitute the law between the parties. We, therefore, cannot extend the provisions of the lease beyond the expressed intentions of the parties. Salles v. Stafford, Derbes & Roy, 173 La. 361, 137 So. 62; Blakesley v. Ransonet,

159 La. 310, 105 So. 354; Wiley v. Davis, 164 La. 1090, 115 So. 280; Kirschman v. Thomas Cusack Co., 10 La. App. 366, 120 So. 720; True v. Cloverdale, 9 La. App. 439, 121 So. 232; United Gas Public Service Co. v. Eaton (La. App.) 153 So. 702; Perkins v. Meeker Sugar Refining Co., 163 La. 227, 111 So. 686.

■ Plaintiffs under the allegations of the petition and terms of the leases may be entitled to the difference between what was paid them and the market price at the well or field where the gas was produced, if such sums be due; but they are not entitled to the general market price of the gas in Richland parish. Harris v. United Gas Public Service Co., 181 La. 983, 160 So. 785. Therefore, the court properly sustained the exception as to the first item.

■ With reference to the second issue, the pertinent part of the lease reads as follows:

"To pay to the lessor Two Hundred Dollars ($200) each year for each well producing gas only, until such time as the gas shall be utilized or sold off the premises, and at that time the royalty above named shall cease, and thereafter the grantor shall be paid one-eighth (⅛) of the value of such gas calculated at the rate of market price at well ———— cents per thousand cubic feet."

In the case of Wright v. Imperial Oil & Gas Products Co., 177 La. 482, 148 So. 685, the royalty clause of the lease was as follows:

"(b) On natural gas, a quantity equal to one-eighth of all produced and used from each well producing gas and from which gas is used for any purpose on or off the premises, and which said one-eighth of all gas produced from each well producing gas and from which gas is used for any purpose on or off the premises, shall be paid for by this lessee to this lessor every three months at the rate of two cents per thousand feet, regardless of the price at which the gas may be marketed or sold, to be computed on the pressure, basis of five pounds according to Boyles law, for the measurement of gas at varying pressure, said payments to begin ninety days after commencing the use of gas."

While the language and the terms of the second clause are not identical with the first one, the meaning is the same, i. e., that the royalty on the gas is payable to the lessors not in kind but in money.

In deciding the question, the court said:

"It is true that the foregoing provision of the contract is immediately followed by another provision, binding the lessee, in the same breath, to pay the lessors two cents a thousand feet for the one-eighth of all gas produced, regardless of the price which the gas brought on the market. The effect of this provision was simply to make the lessee account to the lessors for the gas, going to plaintiffs, at a fixed price in money, instead of in kind. Before plaintiffs could call on defendants to account for the one-eighth gas in money, they had to become of necessity, at one time, the owners of that quantity of the gas. In the very language of section 7 of the Act of 1922, this provision calls for the payment of the royalty in money rather than in kind—a manner of payment, which it is obvious from the section does not throw the burden of the entire tax, on all gas produced, on the lessee, but makes the lessor pay his part, namely, on the part which went to him or to his benefit."

In the case of Wall et al. v. United Gas Public Service Co., 178 La. 908, at page 913, 152 So. 561, 563, we said:

"Previous to the moment the gas reached the surface of the ground, the parties owned nothing so far as the gas was concerned, except the right to explore for it and reduce it to possession and ownership. But when the gas reached the surface of the ground, the parties owned it in the proportion of one-eighth to the lessor and seven-eighths to the lessee, and, if it had been contemplated or provided in the lease contract that the gas should be divided in kind, it would hardly be disputed that the division should be made at the well. * * *

"The reason why the division and delivery is made at the well, in cases where there is to be a division in kind, is that there is where the parties come into ownership of the commodity, there is where title vests. The lessor and lessee are vested with title to the gas at the well or in the field in the same proportion as the oil is owned. And while there is to be no division of the gas in kind, it is nevertheless contemplated that there shall be a 'division,' not of the gas in kind but of its value as fixed by the market price. * * *

"The lessee owned seven-eighths of the natural gas produced under the lease, which included all the constituent elements thereof, all that the gas contained."

See, also, Crichton v. Standard Oil Co. of La., 178 La. 57, 150 So. 668; sections 6, 7, 11, and 14 of Act No. 140 of 1922.

It is our opinion that the defendant properly deducted the proportionate share of the severance tax due by the plaintiffs before paying the amount of the royalty.

For the reasons assigned, we are of the opinion that the trial court correctly sustained the exceptions, and the judgment is therefore affirmed.