141 So.2d 516 (1962)
ARKANSAS FUEL OIL CORPORATION
v.
Mrs. Rosaria Anna PUCCIO, Widow of Andrew MAGGIO, et al.
No. 453.
Court of Appeal of Louisiana, Fourth Circuit.
May 7, 1962.
Rehearings Denied June 4, 1962.
H. C. Walker, Jr., Joseph W. Milner, Shreveport, Monroe & Lemann, and Walter J. Suthon, III, New Orleans, for plaintiff and appellant.
Herman & Herman and Nicholas Masters, New Orleans, for Mrs. Rosaria Anna Puccio, widow of Andrew Maggio, et al., defendants and appellees.
Alvin J. Liska, City Atty., and Posey R. Bowers, Asst. City Atty., for City of New Orleans, defendant and appellee.
Before McBRIDE, REGAN and YARRUT, JJ.
McBRIDE, Judge.
In 1938 the late Andrew Maggio owned three adjoining unimproved lots of ground in New Orleans, each measuring 25 feet front on Magazine Street, by a depth of 110 feet to a private alley; on September 12, 1938, he leased to a corporation then known as Arkansas Fuel Oil Co. that portion of said three lots measuring 75 feet front on Magazine Street, by a depth of 50 feet, the lease providing:
"Lessee shall have the privilege of purchasing * * * at any time during the term of this lease, or any extension thereof."
On November 28, 1958 (during an extension of the lease), plaintiff (whose corporate name had been changed to Arkansas Fuel Oil Corporation) gave formal notice to the heirs of Andrew Maggio, who had *517 been sent and placed into possession of the lessor's estate, that it desired to exercise its option of purchasing the property for $10,000, the amount stipulated as the purchase price, and plaintiff subsequently formally tendered that sum, without avail, to the Maggio heirs who steadfastly refuse to sell the property in accordance with the agreement. This suit ensued. Plaintiff seeks to compel said defendants to specifically perform their obligation of selling the property to it. Impleaded as defendants are the heirs of Andrew Maggio, who answered the suit alleging that the option to purchase is void and unenforceable, as it contemplates the performance of an act which is unlawful and prohibited by the laws of the State of Louisiana, the Ordinances of the City of New Orleans, and the regulations of the City Planning & Zoning Commission of the City of New Orleans, which laws, ordinances and regulations are:
"Act No. 305 of 1926 (Dart's Statutes, Sec. 5770); Ordinance City of New Orleans No. 11,302, C.C.S. Act 300 of 1946.
"Charter of the City of New Orleans, approved May 1, 1954 (Art. 5, Chapter 5, Secs. 5-501 through 5-508, and particularly Sec. 5-502, Sub-Sec. 2, Sec. 5-504, Sub-Sec. 4; Ordinance, City of New OrleansNo. 18,565, C.C.S. of 1953; and,
"Regulations of City Planning and Zoning Commission of City of New Orleans, adopted February 2, 1950;".
Said defendants further allege that their compliance with the option to purchase would entail the subdivision of existing lots and would create interior lots having no frontage upon a dedicated street; that they applied to the Planning and Zoning Commission of New Orleans for permission to make the resubdivision, which request has been denied, and that to comply with plaintiff's demands would be a violation of the law which would subject them to criminal prosecution, and that the sale would be null and void.
Subsequently, by supplemental petition, plaintiff impleaded the City of New Orleans as a defendant and prayed that it have judgment decreeing that the transfer of the property to plaintiff "is free of any restrictions insofar as subdivision approval or resubdivision approval on the part of the City of New Orleans is concerned."
The City of New Orleans answered averring that the option to purchase is void and unenforceable for the same reasons as set forth in the answer of the Maggio heirs. Then follows the citation of certain acts, ordinances, and regulations, also the Home Rule Charter of the City of New Orleans, upon which the City relies. The City also alleged that the Maggio heirs had submitted a formal application to the City Planning Commission of the City of New Orleans for a resubdivision of the land involved which was formally denied.
After a trial of the case on its merits, the trial judge held for the defendants and dismissed the suit, stating in his reasons for judgment:
"The individual defendants refused to convey title, and have urged that they are unable to do so because they would be in violation of the ordinances of the City of New Orleans, and the laws of the State of Louisiana, and the regulations of the City Planning and Zoning Commission of the City of New Orleans. In order to comply with the option to purchase, it would be necessary to subdivide an existing lot which would create an interior lot having no frontage upon a dedicated street. The individual defendants have submitted a request to the Planning and Zoning Commission of the City of New Orleans for such resubdivision, which request has been denied on March 5, 1958; and if the defendants complied with the demands of the plaintiff it would be in violation of law and would subject them to criminal prosecution under such statutes and ordinances. * * *"
*518 Plaintiff appealed.
The lease provides:
"In the event privilege to purchase is exercised within its terms, the Lessor agrees to furnish an abstract of title prepared by a competent abstractor and to submit the same for examination by the attorneys of the Lessee, whose opinion of the title shall be final; * * *."
The Maggio heirs tendered an exception of no cause or right of action in the trial court which was overruled but which is renewed before us. The exception is based on their contention that even if the option or privilege to purchase could have legally ripened into an executory contract by an exercise of the option by plaintiff, it still would not meet the requirements of an enforceable obligation because the above-quoted language regarding title approval amounts to a potestative condition which would render the option null and void under the provisions of LSA-C.C. art. 2035.
The carrying out by plaintiff of its obligation to purchase the property after having given notification that it intended to exercise the option was not dependent on the exercise of its sole will. In Whited & Wheless, Limited v. Calhoun, 122 La. 100, 47 So. 415, it was contended that an agreement was null because the plaintiff did not bind himself absolutely to take the property, but left it within his power to withdraw from the agreement if title was not "satisfactory." It was held that the provisions of LSA-C.C. art. 2034 with reference to potestative conditions did not render the obligation null and void. The Court said:
"* * * It could be made by Calhoun to comply with those obligations, even though the title was not `satisfactory' to it, if in point of law it was one which it should legally have been satisfied with. * * *"
In Girault v. Feucht, 117 La. 276, 41 So. 572, it was held that a provision that the sale should not take place if "titles to the property should be rejected" was not a potestative condition. In that case the Court said:
"Plaintiff replies that the potestative condition to which article 2034 has reference is the one `which makes the obligation depend solely on the exercise of the obligor's will' (Civ.Code, art. 2035); and that in the instant case the event of the rejection of the title was not to depend upon the will of the purchaser, but upon whether the title was found to be good, or the contrary. This appears to us to be the correct view. * * *"
See, also, Jones v. Fowler, La.App., 185 So. 40.
The exception was properly overruled.
The defenses raised by the Maggio heirs and the City of New Orleans are devoid of merit. The law, ordinances, and regulations they cite constitute no impediment to the sale between the Maggio heirs and plaintiff. If these had prohibited such a sale, serious constitutional questions would arise.
The so-called zoning ordinances are not relevant and cannot have any possible bearing on the outcome of this suit, because their sole intendment is to regulate the location and use of buildings and land for trade, industry, and other purposes. They contain no provisions regulating the sales of land.
Ordinance No. 8665, C.C.S., of New Orleans, adopted September 2, 1925, which date, incidentally, was prior to the date of the lease, provides in Sec. 3 that no person, firm or corporation owning or leasing any square of ground or any portion of a square of ground, which is regularly bounded, measured and defined by the established streets of the City of New Orleans, shall so subdivide said square of ground, or any portion of such square of ground, into portions for the purpose of creating a residential or business area, or a combination *519 of both, wherein any portion of said square of ground, or portion of a square of ground, shall have portions which are no longer immediately contiguous to and abutting on a public and regularly defined street in the City of New Orleans, without such plan of subdivision having been first inspected and approved by the City Engineer, etc. This ordinance could not affect the validity of a sale of property. It merely prohibits (see Sec. 6) the use for certain purposes of property subdivided in violation of its provisions.
LSA-R.S. 33:101-33:130 relative to Planning Commissions, authorizes municipalities to appoint planning commissions with power to make and adopt a master plan for the physical development of the municipality, including the regulating of subdivisions. The only penalty provisions therein are to be found in Sec. 114, viz.:
"Whoever, being the owner or agent of the owner of any land located within a subdivision, transfers or sells or agrees to sell any land by reference to or exhibition of or by other use of a plat of a subdivision, before such plat has been approved by a planning commission and recorded or filed in the office of the clerk of court of the parish, shall pay a penalty of one hundred dollars for each lot or parcel so transferred or sold or agreed or negotiated to be sold; and the description of such lot or parcel by metes and bounds in the instrument of transfer or other document used in the process of selling or transferring shall not exempt the transaction from such penalties or from the remedies herein provided. The parish or municipality, as the case may be, may enjoin such transfer or sale or agreement by suit for injunction brought in any court of competent jurisdiction or may recover the penalty by a civil action in any court of competent jurisdiction."
On February 2, 1950, the City Planning Commission of New Orleans adopted certain subdivision regulations pursuant to LSA-R.S. 33:101 et seq., which define a subdivision as "the division of land into 2 or more lots, tracts, sites or parcels any one of which has an area of less than 3 acres." Said regulations provide for standards of design and require that the subdivider shall first submit a preliminary plan of the subdivision to the Commission for tentative approval and subsequently a final plan for approval. No penalty provisions are contained in the regulations except as found in Sec. 10 wherein appears, word for word, LSA-R.S. 33:114 quoted in full above.
Thus, the only penalty stipulated in LSA-R.S. 33:101 et seq., or in the regulations adopted by the City Planning Commission thereunder, is aimed not at one who sells land but at any owner or agent who transfers, or sells, or agrees to sell land located within a subdivision by reference to or exhibition of or by other use of a plat of subdivision before such plat has been approved by a planning commission and recorded or filed in the office of the Clerk of Court. We do not think that the Maggio heirs would be amenable to the penalty provided in the regulations as the sale to plaintiff would not be made "by reference to or exhibition of or by other use of a plat of a subdivision," but according to the description of the property contained in a lease between Andrew Maggio and plaintiff executed more than twenty-five years ago.
There is no legal prohibition against plaintiff's exercise of its option to purchase, nor do we find that any penalty is provided for or which could be assessed against the Maggio heirs personally for making a transfer of the property. We agree that if the Maggio heirs are forced to sell to plaintiff the front portion of each of the three lots, they will be left with the rear portion thereof which does not face a street but fronts on an alley. They say that the zoning ordinance provides that a lot to be put to use for building purposes must face upon a street. As above stated, Sec. 3 of Ordinance 8665, C.C.S., also provides *520 that no square shall be subdivided so as to leave any portion thereof which is no longer immediately contiguous to and abutting on a public street without approval under the penalty, as provided in Sec. 6, of the denial to the owner by the City Engineer of a permit for any sort of building or structure thereon. Unfortunately for the Maggio heirs, making use of the land which they retain might prove difficult indeed, and we sympathize with them. But their ancestor entered into the contract with his eyes wide open. Ordinance No. 8665, C.C.S., was then in full force and effect.
LSA-C.C. art. 1901 recites:
"Agreements legally entered into have the effect of laws on those who have formed them.
"They can not be revoked, unless by mutual consent of the parties, or for causes acknowledged by law.
"They must be performed with good faith."
The parties may make their own contracts, and however unusual they may be or what drastic or unreasonable features there may be therein, they form the law between them and should be enforced so long as they do not contravene good morals or public policy. Oil Field Supply & Scrap Material Co. v. Gifford-Hill & Co., Inc., La.App., 16 So.2d 77 (annulled on other grounds204 La. 929, 16 So.2d 483); Yates v. Batteford, 19 La.App. 374, 139 So. 37, rehearing denied and amended, 19 La.App. 374, 139 So. 746.
It was said in Salles v. Stafford, Derbes & Roy, Inc., 173 La. 361, 137 So. 62:
"All things not forbidden by law legally become the subject of or the motive for contracts. Civ.Code, art. 1764. And agreements legally entered into have the effect of laws on those who have formed them. They cannot be revoked, unless by mutual consent of the parties, or for causes acknowledged by law. They must be performed in good faith. Civ.Code, art. 1901. When the intention of the parties is evident and lawful, neither equity nor usage can be resorted to, in order to enlarge or restrain that intent, nor can any law operate to that effect, unless it be some prohibition or other provision which the parties had no right to modify or renounce. Civ.Code, art. 1963.
"The policy of the law is that all men of lawful age and competent understanding shall have the utmost liberty of contracting, and their contracts, when freely and voluntarily made, are not lightly to be interfered with by the courts. Hence the contract herein submitted for interpretation must be held sacred and be judicially enforced, unless the intent of the parties is wholly unascertainable or is clearly unlawful.
* * * * * *
"* * * The court is not concerned with the wisdom or the folly of the contract. * * *"
In Stewart, Hyde & Co. v. Buard & Dranguet, 23 La.Ann. 201, the Supreme Court maintained the validity of a contract sought to be set aside as having been improvidently entered into and said: "The contract may have been rash, but it was not unlawful; * * *."
The following language is to be found in Blakesley v. Ransonet, 159 La. 310, 105 So. 354:
"* * * The contract in this respect may be a hard one for the defendant, but it is one that the parties were competent to make, and had the right to make. It is the law between them, and the court has no alternative except to enforce it as written."
Therefore, it is ordered, adjudged and decreed that the judgment appealed from be reversed, and that plaintiff now have judgment against the defendants, Mrs. Rosaria *521 Anna Puccio, widow of Andrew Maggio, also known as Mrs. Anna Puccio, widow of Andrew Maggio, also known as Anna Sarah Puccio, widow of Andrew Maggio, Joseph Andrew Maggio, Virginia Rita Maggio, wife of Matthew Greco, Catherine Lucille Maggio, wife of Donald Surgi, and Rita Anna Maggio, widow of Frank Misuraca, ordering them and each of them to specifically perform their obligations under the lease and option to purchase by appearing within sixty days from the finality of this decree before a notary public of plaintiff's choice and signing an act of sale with full warranty and subrogation of warranty, transferring to plaintiff the following described property:
"A certain portion of ground, situated in the First District of the City of New Orleans, in Square 160, bounded by Magazine, Camp and St. Joseph Streets and Howard Avenue, which said portion of ground commences at a distance of 24 ft. 6 inches from the corner of Magazine and St. Joseph Streets, and measures 75 feet front on Magazine Street, the same width in the rear, by a depth of 50 ft. between equal and parallel lines."
for a consideration of $10,000 cash; the act of sale to be at purchaser's cost; all the necessary and usual certificates are to be procured at vendors' cost; United States Revenue Stamps are to be paid for by vendors; taxes for 1962 assessed against the improvements on said property are to be paid by purchaser; taxes for 1962 assessed on the land are to be prorated between the vendors and purchaser.
It is further ordered, adjudged and decreed that if the above-named defendants refuse or neglect to specifically perform their obligation in the manner aforesaid within the time above stipulated, then the recordation of this judgment in the office of the Register of Conveyances of New Orleans, La., accompanied by a deposit by plaintiff of the sum of $10,000 in the registry of the court below, plus its share of the proration of taxes, shall act and serve as a full, complete, and absolute transfer of the title of said property from said defendants to plaintiff with full warranty; in which event the defendants shall be liable to plaintiff for the costs of the necessary United States Revenue Stamps and also the costs of the usual and necessary certificates if plaintiff secures the same.
It is further ordered, adjudged and decreed that plaintiff have judgment against the City of New Orleans prohibiting it or its City Planning Commission from in any way interfering with the sale of the above-described property from the above-named defendants to plaintiff.
It is further ordered, adjudged and decreed that costs of both courts are to be borne by the Maggio heirs.
Reversed and rendered.