McBRIDE, Judge.
This appeal presents a unique and unusual financial transaction between Dr. Ansel M. Caine, now deceased, and the defendants. The transaction was initiated in the latter part of 1959 and early 1960. On November 27, 1959, Dr. Caine advanced $6751.50 to Northern Homes, Inc., and on January 25, 1960, made another advance to said concern in the amount of $23,248.50 or a total of $30,000. Said advances were actually made for the account of defendant Tanho Land and Cattle Co., Inc., to whom Northern Homes, Inc., turned over the money. Tan-ho Land and Cattle Co., Inc., was to utilize the funds for acquiring real estate in St. Tammany Parish which it intended to subdivide. Dr. Caine’s “investment” was made with the expectation he would receive “two for one” for his money in the form of “mortgage notes” in the aggregate sum of $60,000. In short, he was purchasing mortgage notes from Tanho Land and Cattle Co., Inc., in the amount of $60,000 at a 50% discount. What notes or whose notes he was purchasing is not shown, but we suppose he was to take notes Tanho Land and Cattle Co., Inc., received from its vendees in connection with credit sales of lots in the subdivision. The record shows that Dr. Caine never did receive any mortgage notes from Tanho Land and Cattle Co. Some time in 1960, after the above mentioned advances were made, Dr. Caine received from Tanho Land and Cattle Co., Inc., its two unsecured “notes” each for $30,000, not *441 payable in money, but “payable in first mortgage notes". The record is silent as to any other details of the said two notes, such as the dates thereof, the maturities, rate of interest thereon, etc. William T. Campbell, with whom Dr. Caine negotiated as the representative of Tanho Land and Cattle Co., Inc., did not endorse the notes personally, but he nevertheless “guaranteed” them and agreed to be individually bound thereon along with Tanho Land and Cattle Co., Inc. There is no evidence regarding the details of Campbell’s guarantee, such as whether it was in writing, its date, etc., but are certain the guarantee existed. Plaintiff’s exhibit No. 30 is a two-page statement in the hand writing of defendant Campbell, captioned:
“Succession of Dr. A. M. Caine
“Investments made for Dr. A. M. Caine by W. T. Campbell (all secured by W. T. Campbell personally as stated in further detail below)” (Italics ours.)
Campbell then listed the instant transactions.
Some time in the early part of 1961, Dr. Caine and Campbell, the latter representing Tanho Land and Cattle Co., Inc., entered into a novation contract (R.C.C. art. 2185) under which Dr. Caine was to receive from Tanho Land and Cattle Co., Inc., in place of one of the $30,000 notes above mentioned a new unsecured “note” for $30,-000 “payable in mortgage notes” and in place of the other $30,000 note hereinbefore mentioned the agreement was that Tanho Land and Cattle Co., Inc., would pay Dr. Caine in cash over a period of time the sum of $30,000. Plaintiff contends that Dr. Caine was to be paid $500 per month for five years. The defendants’ contention is that the other $30,000 was to be paid at the rate of $3000 annually, said payments being intended as a bonus for the use of the $30,-000 advanced by Dr. Caine, which would have the net result of returning to Dr. Caine in cash, over the 10-year period, his $30,000, which would still leave him retaining the $30,000 new note.
We hold that the agreement for the deferred cash payments was as contended by the defendants for Campbell’s uncontradict-ed testimony runs thus:
“A. The modified agreement, as I understand it, was that Dr. Caine was to relinquish the two notes, each in the amount of thirty thousand dollars, each payable in mortgage notes, and receive in place of that from Tanho, a thirty thousand dollar note due in one year, on which — during that year he would get a ten percent interest payment and each year he would renew the note, upon getting a new note for thirty thousand dollars, and a payment of three thousand dollars of interest.
jfc % ‡ ‡ ‡
“A. There is only one agreement that I can recall which we operated on in 1961, which was that he was to get the thirty thousand dollar note and the agreement to get three thousand dollars a year on each anniversary date of the note for ten years, which would pay him the sixty thousand dollars.
“Q. Over the ten year period ?
“A. Yes, sir.
* :{c * * * *
“Q. Do you know why he explained [exchanged] the — two promissory notes for thirty thousand dollars, each for one promissory note, for thirty thousand dollars?
“A. I have stated my understanding was that Dr. Caine would exchange the two notes for one thirty-thousand dollar note, and an agreement to get the thirty thousand dollars over a period of ten years.
“Q. Was there any writing evidencing the agreement to pay that you gave to Dr. Caine?
“A. I don’t recall.
*442 “Q. Are you denying that you had agreed to pay a bonus of five hundred dollars a month for the other thirty thousand?
“A. It is my recollection we would pay three thousand dollars a year for ten years.”
We are also satisfied that Campbell, as in the first instance, “guaranteed” the indebtedness of Tanho Land and Cattle Co., Inc., under the changed circumstances brought about by the novation.
The new note contemplated by the parties was not executed and delivered to Dr. Caine until July 15, 1961, some months after the novation had been confected. This note, bearing said date, is for $30,000, payable one year after date to the order of Dr. Ansel M. Caine at the National Bank of Commerce in New Orleans, with interest after July 15, 1962, at the rate of 6% per annum, and i£ * * * if not paid at maturity and collected by an attorney or by legal proceedings, an additional sum of ten per cent, on the amount of this note as attorney’s fees”. At the foot of the note appears these words: “Payment to be made in mortgage notes”.
Campbell paid Dr. Caine $1000 in each of the months March, April and May, 1961, and his testimony is to the effect that the $3000 so paid was in satisfaction of the first yearly installment due under the arrangement for the deferred cash payments over the 10-year period.
About January 2, 1963, Tanho Land and Cattle Co., Inc., sent its check for $3000 to Dr. Caine’s executor who refused to accept it.
Dr. Caine died September 26, 1961. The instant suit was filed April 8, 1964, Ansel M. Caine, Jr., the testamentary executor, of the Succession of Dr. Ansel M. Caine, No. 394-493 of the docket of the Civil District Court for the Parish of Orleans, seeking to recover from Tanho Land and Cattle Co., Inc., and William T. Campbell, jointly and in solido, the sum of $57,000 plus interest and 10% attorney’s fees. It is alleged that $30,-000, plus interest and attorney’s fees is due on the note of July 15, 1961, and that there is $27,000 due on the agreement for the deferred cash payments.
After a trial on the merits and several arguments on rehearing during February, 1966, the court below finally rendered a judgment in plaintiff’s favor for $30,000 against both defendants, in solido, with legal interest thereon from judicial demand until paid. Plaintiff has appealed from the judgment; the defendants have not appealed nor have they answered plaintiff’s appeal.
The written reasons for judgment given by the trial judge in part state:
“Tanho intended to subdivide and sell property in order to get the notes it agreed to sell to the Doctor. However, such subdivision was not effected and during March of 1961, the agreement was modified. The terms of the modified agreement are at issue and the evidence is conflicting. (The Doctor having died on September 26, 1961, the Court did not have the benefit of his testimony.) At this point the evidence approaches the stage of ‘Confusion worse confounded’.
“It is the opinion of the Court that the Plaintiff is entitled to a judgment against the defendants in solido in the sum of $30,000, with interest at the legal rate of 5% from April 8, 1964, the date of filing suit, until paid.
“The Court is unable to determine under what circumstances and under what conditions the sum of $3,000 was paid to the Doctor during his life time, this sum being represented by three one thousand dollar checks drawn by Mr. Campbell, payable to the Doctor. Consequently, this amount will be considered as interest from December 10, 1959, up to the filing of the suit on April 8, 1964.
“With reference to all other aspects of the case the Court will dismiss the action. The plea for attorney fees will be denied.
*443 “This Court is a Court of Equity as well as a Court of Law — Let Equity Prevail.”
Appellant contends that the lower court erred in failing to award the stipulated interest on the $30,000 promissory note at the rate of 6% per annum from July 15, 1962, until paid, plus 10% attorney’s fees on said principal and interest; that further the lower court erred in failing to award plaintiff the sum of $27,000 which is the balance due on the agreement for cash payments.
The so-called note for $30,000 sued upon was nothing more, before its maturity, than a promise by the maker to deliver to Dr. Caine mortgage notes in the sum of $30,000. The instrument did not call for the payment of money. The Supreme Court in the analogous case of Blouin v. Liquidators of Hart & Hebert, 30 La.Ann. 714, held that the written agreement of a debtor to pay bonds at a certain time was not a promissory note for the amount of the bonds. The court said:
“ * * * by the terms of the contract Hart & Hebert were bound to return to her the specific things promised, or their value, at the date at which they should have been returned.”
The note stipulates its maturity as July 15, 1962, but according to the unre-futed testimony of Campbell his $3000 payment had the effect of extending the maturity date to July 15, 1963. The note, then, did not mature until the latter date. Once matured, it was no longer an agreement to pay $30,000 in mortgage notes but had assumed the character of a promissory note payable to Dr. Caine for the sum of $30,000 in money with interest from July 15, 1962, at the rate of 6% per annum until paid, plus 10% of said principal and interest as attorney’s fees. 70 C.J.S. Payment § 22, on page 228, announces this rule:
“While payment is ordinarily required to be made in money, it may, when so agreed, either expressly or by implication, or when the creditor so consents, be made by furnishing, transferring, or delivering anything of value; * * * Ordinarily, an agreement for payment other than in money, if made, is presumed to be made in favor of the debtor; he has the option of paying the debt either in the medium specified or in money of equal value, and he cannot be compelled against his will to pay in money; but, after the time for payment has passed, the debt is payable only in money, in the absence of the creditor’s consent to receive something else.”
The late Court of Appeal, Second Circuit, followed the rule as it then appeared in Corpus Juris and held that although a note is ordinarily payable in money the creditor may give the debtor the option of paying in another medium.
The trial court erred in not allowing interest and attorney’s fees on the $30,-000 note.
Now, turning to the demand for the amount allegedly due under the agreement for the cash payments, we are of the opinion that the sum owing thereon at the time the suit was filed was $3000. We arrived at this conclusion thusly: The $3000 which Campbell paid in payments of $1000 satisfied the first payment which was to become due on the stipulated maturity date, July 15, 1962, and extended the maturity for one year, or until July 15, 1963; therefore, at the time of the suit there was only due the $3000 which should have been paid on July 15, 1963. This action was brought in April 1964, before another installment matured. It must be recalled that Campbell testified that upon $3000 being paid each year, the maturity of the note calling for the delivery of $30,000 in mortgage notes was to be extended for an additional year. When the executor declared the note matured and brought suit thereon, he rendered impossible further extensions of the maturity date, such extensions being *444 one of the considerations for the $3000 yearly payments. Moreover, it has not been shown that under the agreement defendants’ failure to pay any one installment would have the effect of maturing all remaining installments. Any payment becoming due after July IS, 1963, had not matured as of the date suit was instituted.
Counsel for plaintiff argue that Campbell’s testimony regarding the yearly payments is not worthy of belief because Dr. Caine was “not so innocent that he would exchange a $60,000 obligation for a $30,000 obligation”. The uncontradicted evidence is that Dr. Caine did surrender one of the original $30,000 notes “payable in mortgage notes” in exchange for an agreement whereunder he was to receive deferred cash payments over a 10-year period. This would seem somewhat unusual. But, agree-, ments legally entered into have the effect of laws on those who form them. R.C.C. art. 1901. It is well settled that the parties may make their own contracts, and however unusual they may be or what drastic or unreasonable features there may be therein, they form the law between them and should be enforced so long as they do not contravene good morals or public policy. Arkansas Fuel Oil Corporation v. Puccio, La.App., 141 So.2d 516.
For the reasons above assigned, the last paragraph of the judgment dismissing the demand for attorney’s fees is reversed and it is now ordered, adjudged and decreed that the judgment appealed from be amended so as to increase the award in favor of plaintiff and against the defendants to the sum of $33,000, with 6% interest on $30,000 from July 15, 1962, until paid and 10% attorney’s fees on said $30,000 and interest, and that there be legal interest on the sum of $3000 from date of judicial demand until paid, and as thus amended and in all other respects the judgment is affirmed. Defendants are cast for the costs of this appeal.
Reversed and affirmed as amended.