The plaintiff in this suit, Guy A. Morvant, formerly operated a night club somewhere around Baton Rouge, which was known as the High Way Club. In the early part of 1939 his business had run down to the point where it became necessary for him to either make some disposition of it or else submit to lawsuits on various accounts which he owed.
The defendants Russell Clemmons, Inc. apparently had been helping him out in his business as it is shown that they had endorsed his lease notes which amounted to quite a large sum of money and had also endorsed a note of $1000 at one of the banks in Baton Rouge. We get the impression from the testimony that they also advanced him some stock of liquors from time to time. *Page 46 
Early in March 1939, one of Morvant's creditors at least, was pressing him for payment of a bill. He had given this creditor's salesman checks which were not paid when presented at the bank on which they were drawn. The salesman called on him in a further effort to collect the money and it seems that that is when he gave up and told him to go see his "friend Russell" (R.G. Russell being the manager of the defendant company) and find out what he could do for him. The result of the whole matter was that on March 22, 1939, some agreement, prepared by Russell himself, was entered into between his company and Morvant, which agreement is now the subject of this law suit.
In this agreement the plaintiff is made to state that he has on "this day delivered into the hands of R.G. Russel and Samuel J. Clemmons my (his) night club known as the High Way Club for the following reasons to-wit and conditions." The reasons and conditions are then stated and apparently the reason is because the club is indebted in an amount estimated to be $2000, more or less, which Morvant concedes cannot possibly be paid from the daily receipts of the business. It is then stated that Russell and Clemmons are to take full charge of the management of the club, run the same and pay the "outstanding accounts which are listed below." Further it is stated that after they will have paid all the accounts "named hereafter" they shall deliver the club back to Morvant on the following terms and conditions: "After having produced receipts for all bills and paid accounts, G.A. Morvant, is to pay into the hands of Russell and Clemmons one thousand dollars, and in the event G.A. Morvant does not pay the said one thousand dollars, the said Russell and Clemmons are to pay into his hands equal sum of one thousand dollars for which G.A. Morvant will give receipted title to said High Way Club." In a closing paragraph of the agreement it is again stated that "it is further agreed and understood that after payment of all bills and accounts Morvant is to have the first option as to the ownership of the club." Following the statements contained in the agreement as above detailed there is a list of nine creditors with the amount due to each which we take to be the outstanding accounts referred to in the agreement itself. These accounts total the sum of $833.62. In addition, reference is made to notes, the amounts not being specified, endorsed by Russell and Clemmons for the Fidelity Bank Trust Company.
A reading of the agreement as drawn up shows it to be very vague and uncertain, and the plaintiff taking advantage of the ambiguity has filed this suit against the defendants seeking to recover of them, on what he claims is their obligation to pay him $1000 for the night club, as, he contends, that since the date of the agreement they have had ample time in which to pay all of the accounts referred to therein. He avers, (and it is observed to be a fact) that no time limit for the payment of the accounts was fixed in the agreement, but that it was orally understood between them that the defendants would not have more than six months in which to do so. In the alternative, he alleges that if it should be found that no such oral agreement was entered into, then the defendants were entitled only to a reasonable time and that such a reasonable time has now elapsed. Further in the alternative he avers that in case it should be held such reasonable time has not elapsed then the court should fix such a time in which the defendants should act and upon showing that they have paid all of the accounts, they should be made to pay him the $1000 they obligated themselves to pay upon his transferring title to the said High Way Club which he is ready and willing to do.
The defendants filed an exception of no cause of action which, at the request of counsel for both parties, was referred to the merits. They then filed an answer in which they admit the agreement which is alleged to have been entered into but deny all of the allegations of plaintiff's petition concerning his interpretation of the same.
After answer had been filed, plaintiff filed a motion for judgment on the face of the pleadings which, after hearing, was overruled. The case then went to trial on its merits and judgment went in favor of the defendants dismissing plaintiff's suit at his costs, whereupon this appeal was taken.
Unless the business had some peculiar attraction for these defendants, or unless the rent notes which they had endorsed and which they most probably would have to pay extended over a considerable period of time, it is difficult for us to understand why they would have been willing to pay plaintiff $1000 in addition to what they had *Page 47 
already paid on other endorsements for him and the accounts that had to be liquidated. And still, vague as admittedly it appears, that is what the contract stipulates and according to Russell's own testimony, that is what it means. He drew up the document himself and must have known what he was obligating himself to do.
The suit seems to be defended on the sole ground that the agreement does not fix a definite time in which the accounts referred to in it were to be paid and further, that as these accounts were to be paid out of the profits of the business itself, defendants have not yet been able to pay them from that source, in full.
According to Russell's testimony with regard to the notes that were referred to in the agreement, these amounted to approximately $958, and he says that when he left Baton Rouge, on October 22, 1939, all had been paid except the sum of about $50. He states however that he does not know if they had been paid out of the receipts of the business or not. He wants to leave the impression that the business was not prosperous enough to pay either these notes or the current accounts. The most we can make out of his testimony is that his operation of this night club was pretty much mixed up with his other business and it was impossible for him to state exactly with what funds he paid any particular account.
A man by the name of A.R Carter, bookkeeper for the defendants, was called as a witness but unfortunately he seems to know as little as does Russell as to how the accounts were taken care of. He filed a statement which he prepared and which he says is the standing of the High Way Club business as of March, 22, 1939. According to him on that date, the accounts due by Morvant amounted to $1813.43. By certain payments, some apparently made for the account of the High Way Club by Russell and Clemmons, this had been reduced to $722.09. The Russell and Clemmons account which on that day appeared to be $877.90 was added to that balance making a total amount of $1599.99. Morvant is then given credit for his stock, the amount of which is fixed at $300 so the total net indebtedness of that day is $1299.99. This statement then refers to a net profit of $513.44 representing the difference between the $1813.43 and the $1299.99, and then there are two further notations of payments, one on an ice-box, of $80 and the other on a clock, of $12, which added to the net profit totals $605.44. The testimony of Mr. Carter in explanation of his statement is very vague but if it means anything it would indicate that in addition to the accounts listed in the agreement amounting to $833.62, there was an indebtedness of $466.37 due Russell and Clemmons on notes or other obligations, which they had assumed, which went to make up the total of $1299.99 that is shown to be due on that day. From this witness' rather indefinite statements we take it that he meant that the accommodation endorsements were not yet paid at the time the case was tried, also that Russell and Clemmons continued to do business with the same people Morvant had been buying from and the accounts were being kept current. In other words they were buying new stock, and as they paid only a part of an account at any time, there was always a balance left over. If that was so, obviously the balance that was due as of March 22, 1939, must have long ago been paid.
Another witness by the name of Charles Schwartz was called by the defendants and he testified that he was present when the agreement was drawn up and signed. He seems to have been called mainly for the purpose of denying the plaintiff's statement that even though no time was stipulated in the agreement for the payment of the accounts that it was orally agreed that the defendants would have six months in which to do so and also to verify Russell's contention that the accounts were to be paid out of the profits of the club. With regard to this last matter he says that he did not hear anything to that effect but that is the only understanding he could have of it. To show how wrong his understanding was, it is only necessary to refer to the agreement itself in which the parties acknowledge that it was impossible to pay the accounts out of the present daily receipts of the business.
The district judge did not assign written reasons for judgment and counsel for defendants did not file a brief in this court. We do not know therefore on what ground the judgment was based. Assuming that the contention of the defendants that they are not bound under the agreement because no time for the fulfillment of their obligation was stipulated therein, was upheld, we find ourselves unable to agree with the learned trial judge. On that *Page 48 
issue we find the law to be well stated in 17 Corpus Juris Secundum, Contracts, § 503, page 1065, as follows: "Where a party to a contract undertakes to do some particular act, the performance of which depends entirely on himself, and the contract is silent as to the time of performance, the law implies an engagement that it shall be executed within a reasonable time, without reference to extraordinary circumstances." To the same effect do we find the law stated in American Jurisprudence, Vol. 12, page 854, sec. 299, and that is the way in which it was construed in Wolfe v. Sample, La.App., 141 So. 812. What is a reasonable time depends of course upon the nature of the contract and the circumstances surrounding its performance. In Corpus Juris Secundum (supra) at page 1068, it is stated that "Perhaps as accurate a definition of reasonable time as may be given is that it is such time as is necessary conveniently to do what the contract requires should be done."
With the law as thus laid down, let us now consider the element of time as it is to be applied in the present case.
The contract was entered into on March 22, 1939. On that day, according to the statement furnished by the bookkeeper of the defendants, the accounts to be paid, including plaintiff's obligations to the defendants themselves, amounted to $1299.99, although on the witness stand he stated that the amount was $1813.43. But even at the larger figure, we find from Russell's testimony that on October 22, 1939, the amount for which they had obligated themselves by endorsements had been reduced from $958 to about $50. Certainly if they had been able to pay more than $900 from March 22, to October 22, 1939, a period of seven months, they should have been able to pay and liquidate an equivalent amount between this last date and the month of June, 1941, when this case was being tried. There is not even a suggestion on the part of the defendants that any extraordinary circumstances prevented them from liquidating all of the accounts that were due by the plaintiff at the time they obligated themselves under the contract, and in the absence of any we conclude that they have had more than a reasonable time in which to do so. Plaintiff is therefore entitled to have them comply with their further obligation to pay him the sum of $1000 and he will have judgment for that amount.
For the reasons stated it is now ordered, adjudged and decreed that the judgment appealed from herein be and the same is hereby reversed, avoided and set aside, and it is further ordered, adjudged and decreed that there be judgment in favor of plaintiff, Guy A. Morvant, and against the defendant, Russell 
Clemmons, Inc., in the sum of One Thousand Dollars with legal interest thereon from the date of judicial demand until paid, and all costs of these proceedings.