214 So.2d 215 (1968)
CHEMICAL CLEANING, INC.
v.
BRINDELL-BRUNO, INC.
No. 3138.
Court of Appeal of Louisiana, Fourth Circuit.
July 1, 1968.
Rehearings Denied October 7, 1968.
*216 Monroe & Lemann, Jerry A. Brown, New Orleans, for plaintiff-appellee.
A. J. Marciante, New Orleans, for defendant-appellant.
Before REGAN, YARRUT, and BARNETTE, JJ.
BARNETTE, Judge.
This is an appeal from a judgment in favor of plaintiff, Chemical Cleaning, Inc., against defendant, Brindell-Bruno, Inc., in the sum of $21,892. The suit arose out of an alleged contract between them for cleaning, according to certain specifications, of pipe systems at the NASA Michoud plant in New Orleans. The plaintiff was a second tier subcontractor performing a highly specialized pipe cleaning job for the defendant, a first tier subcontractor.
A statement of the case is contained in our opinion on an earlier appeal on one aspect of the case, and we will readopt that statement of the case without unnecessarily burdening this opinion with a restatement. See Chemical Cleaning, Inc. v. Brindell-Bruno, Inc., La.App., 186 So.2d 389 (1966), at pp. 390-391.
The earlier appeal was from a judgment dismissing a third party defendant, The Boeing Company, and the dismissal was upheld by this court on appeal. After the case was remanded for further proceedings, the third party petition of Brindell-Bruno against third party defendant, Gurtler, Hebert & Co., Inc. (herein referred to as Gurtler-Hebert), and in turn its reconventional demand against Brindell-Bruno were both dismissed on a joint motion. Therefore the only parties to the trial below and this appeal are Chemical Cleaning, Inc., plaintiff-appellee, and Brindell-Bruno, defendant-appellant.
The essential terms of the alleged contract by which plaintiff undertook the highly specialized job of cleaning the pipe systems were as follows: The estimated time which would be required for the cleaning operation was 34 eight-hour days and the charge computed on this estimate was $11,972. The parties agreed on this price to be paid. They further agreed that if the time required for cleaning to the point of acceptance by Boeing, the owner, would require a longer time than estimated plaintiff would be paid for such additional time the sum of $430 per day for the days in excess of 34. Likewise, if the cleaning should be completed in less than 34 days, the defendant would be credited with a like amount for each day less than 34.
*217 Plaintiff's bid to do the cleaning on the foregoing terms was submitted March 2, 1964. On the same day plaintiff wrote a letter to defendant accompanying the bid in which plaintiff set out in detail the cleaning procedures to be employed on the basis of which its bid was submitted. That letter, written under a caption referring to "Contract No. MICH (FAC) 64-1 Subsystems Test-Mechanical Tube and Valve Cleaning Facility," contains the following significant paragraph:
"If the cleaning program exceeds 34 consecutive eight hour days as a result of (1) prolonged water flushing in order to accomplish inspection and acceptance classifications in compliance with MSFC-SPEC-164,[1] (2) as a result of availability of systems for cleaning, or (3) as a result of completing temporary hook-up of pipe, fittings, or hose, we will require payment of a daily service charge of $430.00 for each day over the 34 consecutive days provided for in this estimate."
The letter concludes with the following:
"* * * Please contact us if you have any questions pertaining to this proposal or the chemical cleaning program. I will immediately submit our cleaning procedure to you upon receipt of your purchase order for this work."
Thereafter on May 22, 1964, the defendant gave plaintiff its "purchase order" on the following terms:
"Chemical cleaning of various lines as covered under Contract No. MICH (FAC) 64-1 (Subsystems Test and Tube and Valve Cleaning Facility at the Michoud Operations for The Boeing Co.)[2] as per plans and specifications and your quotation dated March 2, 1964 for the sum of: $11,972.00.
"Your quotation covers 34 consecutive working days. Should the job be completed in a lesser amount of days, then a credit will be applicable by the number of days saved on the above number of quoted days. Credit shall be the same amount per day as per your quote for days beyond stipulated time in your quotation.
"Please submit necessary cleaning procedures as outlined in the specifications before commencement of work.
 BRINDELL-BRUNO, INC.
 By [Signed] Jos. A. Bruno
 Jos. A. Bruno, President"
On May 29, 1964, plaintiff submitted by letter its cleaning procedures in specific detail. Notwithstanding that the caption of its letter referred to Contract No. MICH (FAC) 64-1, which contract contains under the section "Intent" a more rigid testing specification, plaintiff's proposed procedure contained the following:
"4. INSPECTION & ACCEPTANCE: Following the cleaning of each system, a `contaminate particle count and size determination' shall be made in accordance with NASA specification, MSFC-SPEC-164. For inspection and acceptance classifications in compliance with MSFC-SPEC-164, pipe shall be considered as `Type ITubing, Rigid', and components shall be considered as applicable.
"After the system has been inspected and accepted, it shall be turned back to Brindell-Bruno for purging, pressurization and final completion."
*218 This letter also contained a statement that an additional charge would be made if any recleaning should be required as a result of "* * * Boeing's procedure being inadequate * * *."
This letter of May 29, written under the caption "Contract No. MICH (FAC) 64-1," to which was attached the procedure for cleaning, was stamped indicating Boeing's disapproval June 11, 1964. It was the following paragraph which Boeing rejected specifically:
"Since we will be cleaning in compliance with Boeing's outlined chemicals, chemical strengths, and procedures, we do not assume the responsibility for cleaning results. Should any re-cleaning be required because of Boeing's procedure being inadequate to accomplish the work intended in the scope of the specifications, we will charge additional money to cover the cost of performing additional services to those listed in Boeing's procedure."
Boeing's reason for rejecting this paragraph was that it would not agree to any expense for recleaning to be passed on to it under its general contract.
On June 19 an amendment to the foregoing paragraph on "INSPECTION & ACCEPTANCE" was agreed to by plaintiff as follows:
"Any systems that fail to be accepted after the preceding [sic] procedure has been employed will be re-cleaned. Such re-cleaning will be performed by repeating the stage of the procedure as required until the systems do pass acceptance."
That this amendment was adopted to satisfy Boeing is evident from the concluding paragraph of the letter which specifically declared that it would not affect the contract between Chemical Cleaning and Brindell-Bruno. A letter of July 16 from Boeing to Gurtler-Hebert, the prime contractor, indicated Boeing's approval of the cleaning procedure with the amendment. The letter was written under the caption "Contract MICH (FAC) 64-1" and concluded "* * * that the process piping must be cleaned per the specifications, section 2.5 [of that contract] at no additional cost to Boeing." This clearly indicated Boeing's requirement that the cleaning meet the more rigid test specified in that contract. Whether or not this was communicated to Brindell-Bruno and Chemical Cleaning is not clearly established.
The contention between the parties, concerning which much of the lengthy testimony on trial below related, revolved around the question of whether the contract called for cleaning to meet the specification "MSFC-SPEC 164" or the specification referred to in the purchase order "MICH (FAC) 64-1" (hereinafter referred to respectively as "164" and "64-1"). Basically the difference between these two testing specifications is the degree of cleanliness measured in contaminate particle count for quantity and size. Specification "164" called for a maximum micron size of 175 and fixed quantity limitation, and "64-1" specified particle dimension not exceeding 20-40 microns with stricter quantity limitation. The defendant contends that plaintiff, being an expert in this highly specialized field, was at fault in not knowing the difference in the testing criteria, whereas it, not being qualified in the field, was unaware of "this technicality."
Another point of contention resulted from Boeing's insistence that plaintiff circulate the systems with trichloroethylene, a requirement necessary for making a hydrocarbon determination by means of an infrared spectrophotometer. Trichloroethylene is used as a degreasing agent and is one listed as an acceptable alternative in the general specifications submitted by Boeing. Another acceptable degreasing agent is trisodium phosphate and a nonionic detergent. The choice of solutions submitted by plaintiff and approved by Boeing specified the use of trisodium phosphate. This solution is incompatible with the employment of the infrared spectrophotometer test which Boeing insisted upon using.
*219 The cleaning procedure began on July 30 and within a few days it became evident that the Boeing inspectors were not satisfied with the progress or results. Cleaning continued to August 24 (28 eight-hour days) when it was stopped to resolve the several points of disagreement. During this period plaintiff's employees complained to Brindell-Bruno that Boeing was insisting on cleaning to specifications 64-1, whereas it contended that its contract called for cleaning to the less rigid specification 164. Also there was complaint of disagreement with Boeing over the use of trisodium phosphate instead of trichloroethylene. During this period Brindell-Bruno's representatives repeatedly instructed plaintiff to continue with cleaning according to specifications "just as you proposed"that they would take care of Boeing.
At this point a conference was held by representatives of Chemical Cleaning, Brindell-Bruno, Gurtler-Hebert, and Boeing, on September 14, 1964; and an agreement acceptable to all parties was reached. The substance of the agreement, which is reflected by letters of September 14 and 25, 1964, the latter correspondence approved and signed by all parties, was that Boeing would accept and apply the less rigid testing specifications of 164 and plaintiff would use trichloroethylene as a degreasing agent.
There was conflicting testimony as to whether or not plaintiff proposed to complete the work in 13 additional days for $20,000. No such agreement was reached, but it is significant we think that plaintiff held out the representation that the work could be completed in 10 or 13 additional days. Thus, at most, plaintiff held out the representation that the work could be completed in 39 additional eight-hour days.
Before plaintiff would agree to resume cleaning operations it demanded payment for the 28 days already consumed on the basis of 28/34ths of the contract price of $11,972. The defendant Brindell-Bruno was under contract with Gurtler-Hebert and in turn Gurtler-Hebert with Boeing providing a $1,000-per-day penalty for failure to complete the contract within a specified time. Time was therefore extremely important to Brindell-Bruno and under the pressure of this necessity, it paid to plaintiff the sum of $9,858.80 in order to get cleaning procedure started again. Plaintiff then resumed its cleaning procedures which continued an additional 5½ eight-hour days before final completion. Plaintiff then billed defendant for six days (the time remaining of the initial 34) at 6/34ths of $11,972 and the remaining 45½ days at $430 per day, a total of $21,892.
Plaintiff insisted upon the strict enforcement of the contract and relies upon well-established jurisprudence that contracts are the law between the parties and will be enforced in the absence of fraud or error and if not in contravention of good morals or public policy, even though they may impose harsh conditions upon one of the parties. LSA-C.C. arts. 1901, 1945; Prisock v. Boyd, 199 So.2d 373 (La. App.2d Cir.1967); Richardson v. Cole, 173 So.2d 336 (La.App.2d Cir.1965); Molero v. California Company, 145 So.2d 602 (La. App.4th Cir.1962); Leon v. Dupre, 144 So.2d 667 (La.App.4th Cir.1962); Arkansas Fuel Oil Corporation v. Maggio, 141 So.2d 516 (La.App.4th Cir.1962). We are in complete accord with this principle of law, but find it to be inapposite to the factual situation presented here.
The record before us does not reveal that any formalized contract to do the cleaning work was executed between the parties. Their agreement must be drawn from the letters and the purchase order filed in evidence. We have made specific reference to the most pertinent letters and the purchase order and have quoted about excerpts therefrom which clearly show that there was never a meeting of the minds between the parties on the testing specifications to be applied. The plaintiff's bid and its accompanying letter, notwithstanding its caption reference *220 to the contract specifying 64-1, indicate its intention to clean to specification 164. The purchase order accepting plaintiff's bid makes specific reference to the contract requiring the cleaning to meet the specifications in 64-1. All subsequent communications continue these conflicting references. Not until the agreement of September 14, as confirmed by letter of Gurtler-Hebert, and approved by Boeing's letter of September 25, acknowledged by all parties, was there a meeting of the minds between plaintiff and defendant on this essential element of their contractual agreement. It was only then that the requirement for valid contract under LSA-C.C. art. 1945 was met. The pertinent part of that article reads:
"Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify them. Upon this principle are established the following rules:
* * * * * *

FourthThat it is the common intent of the partiesthat is, the intention of allthat is to be sought for; if there was a difference in this intent, there was no common consent and, consequently, no contract."
Considerable testimony was given below to indicate that plaintiff's procedures were not efficient and that its equipment used in the cleaning process was inadequate. On the other hand there is testimony that plaintiff's cleaning methods did achieve the cleanliness level necessary to meet specification 164. It is our opinion however that at the end of the initial 28-day period plaintiff was far behind the 34-day schedule initially set for completion of the project. This conclusion is fortified by the fact that after cleaning was resumed a total of 51½ days was required for completion. It is not unreasonable therefore to hold that for all practical results the 28 days was a waste of time and effort.
The question which has given us the greatest difficulty is the apportionment of the loss of the $9,858.80 for the 28 days expended in the initial cleaning procedure. There is no evidence in the record before us upon which we can determine with any reasonable approximation an amount to which plaintiff might be entitled on a quantum meruit basis.
We conclude that the responsibility for the loss of the 28 days must be borne equally by the plaintiff and the defendant. During this initial period there was no meeting of the minds between them, as we have pointed out above, on the essential matter of the level of cleanliness to be achieved. They were mutually at fault for exchanging letters and a work order containing inconsistent provisions relative to the testing specifications. Each of them must be held responsible for failure to resolve these obvious inconsistencies before undertaking the work. It was this failure, for which they are mutually responsible, which led to the difficulty with Boeing and resulted in the wasted effort expended in the initial 28-day period.
We will exercise the discretion vested in us by LSA-C.C.P. art. 2164 and render a judgment on this issue which in our opinion is just, legal and proper upon the record before us on this appeal. The ends of justice, we think, will more adequately be served in this manner than they would be by remanding the case for further trial on quantum meruit. Accordingly we accept the figure of $9,858.80 as representing the amount of the loss caused by the misunderstanding between the plaintiff and defendant, during the initial 28-day period, as to the level of cleanliness to be achieved. Therefore we assess this loss to both plaintiff and defendant jointly and credit will be given defendant for one-half of the amount previously paid.
This brings us to a consideration of the amount to which plaintiff is justly entitled for the additional 51½ days work.
We have held that the agreement between the parties was incomplete in that there was no meeting of the minds on the *221 matter of testing specifications, but in respect to the price to be paid for the first 34 days of work and the amount to be paid per day for those in excess of 34, there was agreement. Accordingly we will apply these figures in determining the amount of plaintiff's award. There was also agreement between them that approximately 34 days would be required for full performance of the cleaning project.
Considering the first 28 days as lost when the work was resumed it should have required no more than approximately 34 additional days to complete the project. This does not take into account any progress whatever in the initial 28-day period, which in reason must have been of some benefit. If no more, at least it was not necessary to set up the equipment again to resume cleaning. This was accomplished in the initial period.
There is evidence that when the parties were in conference to resolve the points of disagreement, plaintiff stated that the work could be completed in 13 days, but we have searched the record in vain to find that a firm agreement was reached between them for completion in this additional time.
Unquestionably there was some discussion about 13 additional days, and John Henry Rusch, Jr., president of Chemical Cleaning, Inc., testified that he took exception to the interpretation of the 13-day estimate to mean work days. He said:
"* * * That would come to 30 to 39 eight hour days estimated figure which we thought was quite valid and if you'll look at the beginning it was the same solution and 34 days we had estimated when we started, I'm afraid we hadn't accomplished too much as far as getting the requirement approved in the first 28 days even though we followed the procedure."
If we accept this estimate in the light most favorable to plaintiff we must conclude that it held out to defendant the representation that the work could be completed in an additional 39 eight-hour days. This is a figure close to the original estimate of 34 and should have been adequate time for completion, especially in view of the fact that probably some benefit had been gained in the initial 28-day period.
Plaintiff held itself out to defendant as one experienced in this type of work and estimated the days required to do the work saying it was basing its estimate on its previous experience in this type of work. In its letter of June 19 it said:
"* * * Should any re-cleaning be necessary, it is possible that there will be no increase in our total estimated time of 34 consecutive eight hour working days. However, if such re-cleaning work did make our total job time exceed the 34 consecutive eight hour working days, we would bill you our daily rate for the excess days. Of course, you would still get credit for any days saved on the 34 day basis."
Here there was an indirect representation that the work might be completed in less than 34 days. The defendant relied on these representations which gave no hint that in any event the work would require 79½ days.
Here we have a situation where plaintiff is faced with a possible $1,000-per-day penalty while the plaintiff stands to benefit to the extent of $430 per day for every day the work is protracted. There was little incentive for plaintiff to push the work to an early conclusion. We must conclude that the excess days consumed by plaintiff in completing the job were at too great a variance from the approximate number of days it held out to plaintiff for completion, and it will not be permitted to profit unjustly by its own gross miscalculation.
The plaintiff is the expert in this matter and represented itself to defendant as having had experience in making *222 estimates on cleaning jobs of this kind. The defendant had a right to assume that plaintiff's expert estimate would bear some reasonable proportion to the total time required for completion of the job. The contract specified the approximate time and provided for flexibility to meet with contingencies which might arise. In these respects it cannot be said that the contract is silent. However, since it fails to provide a maximum number of days in any event, it may be said to be silent in this important respect. This silence we think calls for the invocation of the principle of equity prescribed by LSA-C.C. art. 1965.
There must be some reasonable limit imposed on defendant. To apply its literal interpretation of the agreement it could go on indefinitely at $430 per day. Surely, not even this plaintiff can seriously contend for such interpretation, for it leads obviously to absurdity and violates LSA-C.C. art. 1945(3). Where then shall we draw the line? Should it be at 51½ days or 79½ or 100 or more? The question itself illustrates the absurdity of plaintiff's contention. The answer must be in the application of the rule of reason. LSA-C.C. art. 2050; Guzzo v. Liggio, 224 La. 313, 69 So.2d 357 (1953); Noyes v. F. A. Noullet & Co., 118 La. 888, 43 So. 539 (1907); Richard v. Foods and Services, Inc., 162 So.2d 213 (La.App.1st Cir.1964); Morvant v. Russell & Clemmons, 11 So.2d 45 (La.App.1st Cir.1942); Wolfe v. Sample, 141 So. 812 (La.App. Orleans 1932). The rule of law applied in the foregoing cases is well stated in 17A C.J.S. Contracts § 503(1)a at p. 783 as follows:

"Building and construction contracts. The rule that a reasonable time for performance will be implied where no time therefor is fixed by the contract applies to building and construction contracts. So, where the time for performance as fixed by the contract has been waived or extended, without any provision being made for the duration of the extension, the law implies that it shall be for a reasonable time."
Plaintiff argues that the foregoing authorities are not pertinent for the reason that the performance of the contract did not depend entirely upon itself, contending that defendant and Boeing delayed its work by certain failures on their part. We do not agree that the delays attributable to Brindell-Bruno and Boeing were such extraordinary circumstances as would account for more than a few days. By no stretch of reason could they approach a justification for a delay of 51½ days. Specifically plaintiff contends that its work was delayed in the initial period due to a conflict with Boeing on the location of equipment. In the second period there were some delays due to Brindell-Bruno's failure to have systems ready for cleaning; another because Boeing did not supply trichloroethylene promptly. None of these delays were for more than a few hours to a half day. Much of the delay during the initial 28-day period was attributable to the issue over testing specifications.
The testimony does not support a finding of any substantial delay not attributable to plaintiff and it falls far short of explaining the excess time for which plaintiff seeks payment.
It does not appear reasonable to assume that the second period of work should require more than the estimated time of the initial period, however, the estimate of 39 days is not at so great a variance from 34 as to be unreasonable, even conceding that no progress whatever was made in the initial 28-day period. Therefore we will deny plaintiff's demand for 51½ days and allow recovery on the basis of 33 days in excess of the 34. Or, expressed another way, 39 days for the second period of work. This is in keeping with plaintiff's estimate most favorable to itself.
*223 Therefore we will allow $352.10 per day for the first 6 days, which represents the balance of the initial period. Computed at 6/34ths of the agreed price for 34 days the plaintiff is entitled to recovery of $2,112.70 for this period. We will allow recovery of $430 per day for the additional 33 days, or the sum of $14,190 for this period. This makes a total allowance for the 39 days of $16,302.70. From this figure must be deducted the sum of $4,929.40, the credit due defendant from the $9,858.80 previously paid to plaintiff. The balance is $11,373.30 for which amount judgment will be awarded plaintiff. Thus plaintiff will have received a total of $21,232.10 or $9,260.10 above its initial estimated bid.
For the foregoing reasons the judgment in favor of plaintiff, Chemical Cleaning, Inc., against defendant, Brindell-Bruno, Inc., in the sum of $21,892 is amended by reducing the amount thereof to the sum of $11,373.30, and as amended and in all other respects it is affirmed.
Costs of this appeal shall be paid by plaintiff-appellee.
Amended and affirmed.
NOTES
[1] This abbreviation refers to George C. Marshall Space Flight Center, National Aeronautics and Space Administration specifications for "Cleanliness of Components for Use in Oxygen, Fuel and Pneumatic Systems," of April 16, 1962, as amended November 8, 1963.
[2] In Part IV under the caption "Technical Specifications" and the subheading "Intent" is: "This specification sets forth the process cleaning requirements for liquid and gaseous piping systems. * * *" Then follows specifications regarding allowable particle population limiting quantity and particle size measured in microns.